LAND, J.
Plaintiff sued to recover a balance of $7,590.13 alleged to he due for cypress lumber sold and delivered to the defendant under two contracts, one for 500,-000, and the other for 1,000,000, feet. It is admitted that 414,874 feet of the total amount of lumber covered by these contracts was never delivered. Defendant averred that the nondelivery of the lumber was a breach of contract, and reconvened for damages in the sum of $2,074.37 for loss of profits. There was judgment in favor of the plaintiff for $3,840.27, and the reconventional demand was rejected. Defendant has appealed.
The appellant contends that the judgment in favor of the plaintiff should be for $3,475, less the amount of damages claimed in re-convention. Our learned brother below, in a well-considered opinion in which the figures are given, found a balance of $3,840.27 due the plaintiff on a settlement of accounts, after rejecting several small credits claimed by the defendant as not proven or as not due. Defendant’s counsel has not pointed out wherein the trial judge erred in rejecting the items of demurrage and interest.
The real issue in the case is the question of damages, the consideration of which requires a brief statement of the facts of the case.
[1-3] Between December 1, 1905, and August 1, 1906, plaintiff delivered to defendant on the mill yards about 492,000 feet of lumber, out of which about 100,000 feet had been shipped out. The parties made another contract for the delivery of an additional 1,000,000 feet of lumber on the same terms. Under the second contract the plaintiff sawed and delivered about 500,000 feet of lumber. In February, 1908,' there was on the mill yards 556,032 feet of lumber which had not been removed and shipped out, and all of this lumber was destroyed by an accidental fire. Advances had been made on this lumber but there was a net balance due plaintiff of about $3,800 on account of the purchase price. This lumber was insured in the name and for the benefit of the defendant company. Plaintiff instituted the present suit in July, 1909. In the answer filed March 5, 1910, the defendant averred that it had brought suits against two certain insurance companies to collect the insurance on the lumber destroyed by fire as aforesaid, and that the companies had defended on the grounds that the plaintiff had violated the “clear space” clause in the contracts of insurance, and that the policies had been thereby avoided. Defendant further averred that, if as alleged plaintiff had violated the said “clear space” clause, thereby preventing respondent from recovering the amount of the loss, then such violation should prevent the plaintiff from recovering any judgment whatever in this suit. Respondent further averred that, until the determination of the suits on the insurance policies, this cause should not be heard or determined. The records of no such suits were filed in evidence, but we find in the transcript a copy of the petition and answer in the suit of O. H. Avery v. Alliance Insurance Co., in United States Circuit Court of Missouri, in which the plaintiff sued as assignee, for value, of the defendant company, and in which the insurance company answered by a general denial. Hence there is no evidence to sustain the averments of the answer that the insurance companies had denied liability on the ground that the plaintiff had violated the *115 “clear space” clause of the policies. It follows that the respondent has shown no legal excuse for retaining since February, 1908, the admitted balance due the defendant, and that the defendant could not put the plaintiff in default without first paying or tendering the amount due him for lumber already delivered and accepted. It is well settled that a party cannot claim damages for the nonperformance of a contract as' to which he himself is in default. Silverman v. Caddo Oil & Gas Co., 127 La. 928, 54 South. 289; Murphy v. Southern Mineral & Land Improvement Co., 58 South. 766, 130 La. 914.
Our learned brother below found on the evidence that the defendant, after accepting two deliveries of lumber under the contract from temporary lessees of the plaintiff, who had assumed his obligations, refused to accept lumber from them, when “the price of lumber had gone down in’ October, 1907, and the panic came on, and there was a general shrinkage in the value of lumber.” The fact that over half a million feet of lumber delivered under the contract was on the mill yards in February, 1908, when it. was destroyed by fire indicates that the lumber could not be marketed at a profit. ■
Judgment affirmed.