(87 South. 243)

No. 23832.

## DENMAN et al. v. WILDER et ux.

(Jan. 3, 1921. Rehearing Denied Jan. 31, 1921.)

*(Syllabus by Editorial Staff.)*

1. **Husband and wife** ⬥138(3), 232(3)—**Facts held to show agreement unauthorized by wife as well as abrogated by subsequent contract.**

In a suit against husband and wife, in which plaintiffs sought to be declared owners of one-half of certain mineral leases held by the wife, facts *held* to show that the wife did not authorize or ratify the original agreement with plaintiffs made by her husband, and also that such agreement had been abrogated by a subsequent contract between all the parties and a corporation.

2. **Husband and wife** ⬥49½(5) — **Husband may validly transfer to wife by dation en paiement.**

A husband may validly transfer to his wife by dation en paiement, and she may validly receive, cum onere, a contract or right which carries with it an obligation, provided she does not personally assume her husband's obligation, and, although mineral leases with commercial value transferred to her carried an alternative obligation for lessee to drill for oil within specified time, the transfer is valid.

3. **Fraudulent conveyances** ⬥95(6)—**Transfer from husband to wife by dation en paiement held not fraudulent.**

Where the evidence of a debt due by a husband to his wife, in consideration of which a dation en paiement was made under which the husband had transferred mineral leases to the wife, was recorded 24 years before transactions with plaintiffs, who attacked the dation en paiement as a fraudulent simulation, plaintiffs could not claim fraud.

Appeal from Third Judicial District Court, Parish of Claiborne; J. E. Reynolds, Judge.

Suit by T. F. Denman and another against A. E. Wilder and wife. Judgment for defendants, and plaintiffs appeal. Affirmed.

Hall & Bullock and Barret & Files, all of Shreveport, for appellants.

Barnette & Blanchard, of Shreveport, and

McClendon & McClendon and John S. Richardson, all of Homer, for appellees.

O'NIELL, J. Plaintiffs sued to be declared the owners of one-half of certain mineral leases held by Mrs. Wilder, covering 15,000 acres of land in the Claiborne oil field. Judgment was rendered in favor of the defendants, A. E. Wilder and wife, rejecting the demand of the plaintiffs, and they prosecute this appeal.

Plaintiffs contend that, under a certain contract dated July 28, 1917, and modified on July 29, 1917, Mr. and Mrs. Wilder were obligated to transfer to plaintiffs a half interest in the leases now in contest. Defendants contend that the contract was never carried out and was abrogated by consent of all parties thereto by contract dated the 10th of November, 1917. Mrs. Wilder urges the further defense that her husband had no authority to bind her to transfer any interest in the leases in contest.

By the terms of the contract dated the 28th of July, 1917, A. E. Wilder agreed to transfer to a corporation to be organized by Denman and Williams mineral leases covering 10,000 acres of land. It was agreed that the capital stock of the corporation to be organized by Denman and Williams should be $50,000, $30,000 of which should be treasury stock to be sold at par for the purpose of financing the company and to enable it to drill two test wells on the 10,000 acres of land. Of the remaining $20,000 of stock, $4,000 was to be issued to an associate of A. E. Wilder, $6,000 was to be issued to Wilder himself, $5,000 was to be issued to Williams, and $5,000 to Denman. It was agreed that the remaining leases, supposed to be owned and controlled by Wilder, covering 15,000 acres of land, would be "pooled" and be under the control of Wilder and Denman and Williams, to be sold by them, the proceeds of which sales to be divided in the pro-

portion of 20 per cent. to an associate of Wilder and the remaining 80 per cent. equally among Wilder and Denman and Williams. The contract was signed by Wilder and Denman and Williams. Mrs. Wilder was not a party to the agreement, and her name was not signed to the instrument either by her or any one pretending to represent her.

By the contract dated the 29th of July, 1917, it was agreed that the capital stock of the corporation to be organized by Denman and Williams should be $100,000 instead of $50,000, and that $65,000 of the stock should be retained as treasury stock and sold at par, for the purpose of financing the corporation and for drilling the two test wells on the 10,-000 acres and two other wells on leases to be thereafter acquired. The remaining stock was to be issued to Wilder and his associate and to Denman and Williams in certain proportions stated in the contract. It was stated in the contract that Wilder owned and controlled leases on 25,000 acres of land, as shown on a map; that he would "pool" all of the leases with Denman and Williams; and that they would transfer the leases on 10,000 acres to the corporation to be organized. It was also agreed that the leases on the remainng 15,000 acres should be "pooled" and remain under the control of Wilder and Denman and Williams, to be sold by them, and that the proceeds would be divided in the proportion of 10 per cent. to the associate of Wilder, 40 per cent. to Wilder himself, 25 per cent. to Denman, and 25 per cent. to Williams. The name of the associate of Wilder to whom a proportion of stock was to be issued was not given in either of the contracts. The contract of July 29, 1917, was signed by Wilder and Denman and Williams. Mrs. Wilder was not a party to the agreement, and the instrument was not signed by her nor by any one for her.

On the 27th of August, 1917, Wilder and Denman and Williams signed a charter for a corporation styled the Homer-Shreveport Oil Company, having an authorized capital stock of $100,000. The objects and purposes of the organization were declared to be to drill, mine, and explore for oil, gas, and other minerals; to buy, sell, and lease lands; to own and operate refineries and pipe lines; and to do anything incident or necessary to a mineral, oil, and gas business. No stock was subscribed or paid for or issued, and no subscription list was made. The charter was recorded in the parish of Claiborne and was published in a local newspaper, but the act of incorporation was never completed by obtaining authority from the secretary of state for the corporation to engage in business.

On the 18th of October, 1917, an agreement was entered into between T. F. Denman, representing the Homer-Shreveport Oil Company, and R. L. Smith, representing the Progressive Oil Company, of New York (the name of which company was afterwards changed to the Consolidated Progressive Oil Corporation), by which agreement, the New York corporation was to transfer 100,000 shares of its treasury stock, at the par value of $1 per share, to the Homer-Shreveport Oil Company, in consideration for which the Homer-Shreveport Oil Company was to transfer mining leases on 17,600 acres of land in the Claiborne field, which was then wildcat territory. The Progressive Oil Corporation agreed to expend $50,000, or as much thereof as might be necessary, for drilling the test wells, and was to pay $25,000 in cash to the Homer-Shreveport Oil Company.

On the 22d of October, 1917, A. E. Wilder signed an instrument, reciting that, in contemplation of the fact that the Homer-Shreveport Oil Company was to transfer its holdings, rights, and privileges to the Consolidated Progressive Oil Corporation for the consideration stated in the agreement between R. L. Smith and T. F. Denman of the

100,000 shares of treasury stock to be issued by the Consolidated Progressive Oil Corporation to the Homer-Shreveport Oil Company, 12,500 shares should go to Denman as promotion stock, and the remaining 87,500 shares should be divided equally among the three parties, Wilder and Denman and Williams, and that, of the $25,000 cash bonus to be paid by the Consolidated Progressive Oil Corporation, Wilder should receive one-half and Denman and Williams each one-fourth. As to the leases on the remaining 15,000 acres of land, supposed to be owned or controlled by Wilder, he agreed that the terms should remain as stipulated in the contract dated the 29th of July, 1917. This instrument, dated the 22d of October, 1917, was signed by Wilder alone, and he did not pretend to be acting for any one except himself. On the same day Wilder gave Denman another written instrument, purporting to extend the time within which drilling operations should be commenced on the 10,000 acres of land. The latter instrument was signed by Wilder individually and also as the agent of his wife, Mrs. Bennie H. Wilder; but there is no evidence that she ever authorized him to sign for her. On the same day Wilder wrote a letter to Denman, authorizing him to close the deal with the Consolidated Progressive Oil Corporation for taking over the interests of the Homer-Shreveport Oil Company, on the terms stipulated in the agreement dated the 18th of October, 1917. The letter was signed by Wilder alone, in his individual capacity, and there is no evidence that Mrs. Wilder authorized or approved it.

In the documents signed by Wilder he assumed that the leases on the 10,000 acres of land had been actually transferred to the Homer-Shreveport Oil Company. As a matter of fact, the incorporation was not complete and did not own any property or have any assets whatever. In his answer to this suit Wilder says that he overlooked the fact that the incorporation had not been completed and had not acquired the leases on the 10,000 acres of land.

On the 10th of November, 1917, Mr. and Mrs. Wilder and Denman and Williams signed a contract with the Consolidated Progressive Oil Corporation, carrying out the memorandum agreement between Smith and Denman dated the 18th of October, 1917, and abrogating all previous contracts or agreements between Wilder, on the one hand, and Denman and Williams on the other. The abrogation of the previous contracts and agreements was made in these words, viz.:

"Whereas, it was contemplated at that time [referring to the memorandum agreement of the 18th of October, 1917] by the first parties herein [Mr. and Mrs. Wilder and Denman and Williams] to organize and incorporate the Homer-Shreveport Oil Company, but that said company was never organized, and that all of said lease contracts are now held and owned by the first parties hereinabove mentioned; and

"Whereas, in said memorandum of agreement mentioned the said R. L. Smith and his associates were referred to as the Progressive Oil Company, and whereas, in fact, the said R. L. Smith and associates organized as the Consolidated Progressive Oil Corporation:

"Now, therefore, it is agreed that, as a consideration for the transfer of the oil and gas leases covering the property in Claiborne parish, La., embracing 17,600 acres of land, the said Consolidated Progressive Oil Corporation does hereby transfer to the first parties the one hundred thousand dollars ($100,-000) of the treasury stock of the said Consolidated Progressive Oil Corporation, in the following proportions," etc.

[1] Plaintiffs in this suit put great stress upon the statement in the foregoing contract that the lease contracts were then held and owned by the first parties to the contract. The instrument shows plainly, however, that the lease contracts referred to were the leases covering the 17,600 acres of land, of which the leases on 10,000 acres were then owned by Mrs. Wilder, and the leases on 7,600 acres were then owned by Denman and

Williams, and did not form any part of the leases on the remaining 15,000 acres, held by Mrs. Wilder.

Under these circumstances, our opinion is that the judgment appealed from is correct and should be affirmed, not only because Mrs. Wilder did not authorize the original agreement made by her husband with the plaintiffs herein, but also because the agreement was abrogated by the subsequent contract between all parties hereto and the Consolidated Progressive Oil Corporation. The latter contract did not provide for Mrs. Wilder's "pooling" or otherwise surrendering her leases on the 15,000 acres of land claimed by plaintiffs in this suit.

Appellants contend that Mrs. Wilder ratified the original agreement made by her husband, but there is no evidence to support the contention. And it would not affect the case if Mrs. Wilder had ratified the original agreement, because of its having been subsequently abrogated by mutual consent of all parties hereto.

[2] Appellants contend that the dation en paiement by which Wilder transferred to his wife the leases now in contest was absolutely null because the contracts of lease carried with them an alternative obligation on the part of the lessee either to commence drilling a well within a specified time or to pay a stipulated rental for an extension of the time. It is too well settled by the decisions of this court to admit of much discussion that a man may validly transfer to his wife, by dation en paiement, and she may validly receive cum onere, a contract or right which carries with it an obligation, provided the wife does not personally assume the obligation of her husband. In this instance, Mrs. Wilder did not personally assume any obligation as lessee under the contracts which were transferred to her, and it appears that the contracts had a commercial value at the time they were transferred to her.

[3] It is also contended by appellants that the dation en paiement was a fraudulent simulation; but that contention is contrary to the allegation in the plaintiffs' petition that A. E. Wilder had transferred the leases to his wife without any consideration and merely to be held for the benefit of himself and the plaintiffs in this suit. The allegation that the dation en paiement was not made for a valid consideration is not borne out by the evidence. The dation was made seven months before any negotiations were had between Wilder and Denman and Williams. The evidence of the debt due by Wilder to his wife, in consideration of which the dation en paiement was made, was recorded 2½ years before the first negotiations were had between Wilder and Denman or Williams. The appellants are therefore not in a position to charge that there was fraud in the transactions had between Mr. and Mrs. Wilder.

The judgment appealed from is affirmed at appellants' cost.