O’NIELL, J.
This is an action for damages for an alleged breach of contract on the part of defendant to sell and deliver to plaintiff 1,000,000 feet of lumber. Plaintiff alleges that, after delivering 115,665 feet of the lumber, defendant failed and refused to deliver more;' and that he (plaintiff) would have made a profit of $5.40 per M. feet, or $4,775.-40, on the remaining 884,335 feet of lumber, if defendant had delivered it. Defendant denies that he violated the contract; and he avers that plaintiff would have suffered a loss on the lumber at the prices stipulated, and that he (plaintiff) violated the contract by failing to pay for the lumber delivered, at the time and place stipulated, and thereby prevented defendant’s paying his employes promptly, causing them to quit work and to put an end to defendant’s sawmill business, at a loss of $4,500. He prayed for a rejection of plaintiff’s demand and for damages in the sum of $4,500. The district court rendered a judgment of nonsuit against plaintiff, and rejected defendant’s reconventional demand. Plaintiff has appealed, and defendant, answering the appeal, prays that his reconventional demand be allowed.
The following is a copy of the contract:
“Know all men by these presents, that we, S. T. Anders, of Webster parish, La., hereinafter known as the party of the first part, and D. W. Smith, also of Webster parish, La., and hereinafter known as the party of the second part, have entered into the following contract:
“The party of the first part has sold, and does by this contract bind and obligate himself, his heirs and assigns, to sell and deliver, to the party of the second part, his heirs or assigns, one million feet of pine lumber (representing lumber to be cut from timber of the Ward tract and eighty acres formerly belonging to Long Beach Lumber Company), at the following prices, to be paid f. o. b. cars at McIntyre Station on the L. & A. By.:
“Grades Nos. 1 and 2, $8,00 per M.
“B and better, 6 inches and wider, $16.00 per M.
“Less two per cent.
“All lumber to be well manufactured, trimmed and edged, and to be cut in lengths and thicknesses as per the written orders of the party of the second part delivered to the party of the first part, or his foreman or agent.
“Said lumber is to be dressed and worked in any patterns or dimensions, or delivered on cars rough, as per written instructions of the party of the second part.
“All lumber to be carried in stock until shipping dry, unless the party of the second part gives written instructions for it, or part of it, to be shipped before it is dry.
“Said party of the first part binds and obligates himself to cut and deliver the million feet, as per this contract, within twelve months from this date, provided the party of the second part complies with his part of the contract.
“Party of the first part binds and obligates himself, his heirs and assigns, not to sell any lumber cut on his mill better than No. 2 grade, until the million feet herein sold is cut and'delivered, unless he has the written consent to do so from the party of the second part, his heirs and assigns.
“Done and signed in duplicate this second day of June, 1915.
“[Signed] S. T. Anders.
“D. W. Smith.
“Witnesses: [Signed] A. D. Turner.”
Plaintiff did not allege in his petition that he had ever given orders or instructions, either written or verbal, as to the dimensions *477 or patterns of lumber to be delivered, or as to, whether the lumber should be delivered' rough or dressed, as required by the third and fourth paragraphs of the contract. The petition, therefore, did not show that plaintiff had complied with his obligations, and did not disclose a cause of action. Although defendant did not file an exception of no cause of action, or object to plaintiff’s proving that he had complied with his obligation to furnish written orders or instructions as to the dimensions or patterns of lumber to be delivered, or as to whether it should be rough or dressed, plaintiff did not offer such proof. On the contrary, he admitted in his testimony that he had never given any such orders or instructions, either written or verbal. That is probably the reason why the district court dismissed plaintiff’s suit. We are not sure of the judge’s reasons for judgment, because he did not reduce them to writing.
[1] The main defense to the suit is that plaintiff violated the contract by failing to pay promptly, at the time and place stipulated, for the lumber that was delivered. The stipulation was that the prices stated were “to be paid f. o. b. cars at McIntyre Station.” The record shows that the expression “to be paid,” inserted before “f. o. b. ears,” was an unusual one for such a contract, and that its purpose and meaning was that payments should be made promptly on delivery of each carload of lumber. The evidence shows also that, if payments were not to be made immediately upon delivery of each carload of lumber, the contract would not have contained the words “to be paid,” and, according to custom in the lumber trade, the expression, “prices f. o. b. cars, at McIntyre Station, less two per cent.” would mean merely that the seller should bear the cost of loading, and the purchaser the freight, and that the Invoices should be paid within 60 days after delivery, and be subject to a discount of 2 per cent if paid within 10 days. The evidence shows, too, that the reason for inserting the unusual stipulation, that the prices were “to be paid f. o. b. cars at McIntyre Station,” was that defendant needed the money promptly to meet his pay rolls, and that plaintiff, who was to ship the cars immediately and retain the bills of lading, had very little financial responsibility. He had not closed any sale for the lumber, and had to ship out each carload immediately and depend upon selling" it in transit or at its destination, and draw a sight draft for 80 per cent, of the invoice price. Our conclusion from the evidence is that the expression “at the following prices, to be paid f. o. b. cars at McIntyre Station,” meant that plaintiff’s obligation was to pay for each carload of lumber promptly and before shipping it.
[2, 3] As a matter of fact, he did not always pay promptly, and his ultimate failure in that respect is what prevented a fulfillment of the contract. The first carload of lumber was paid for 10 days after it was shipped, the second carload was paid for on the day it was shipped, and the next two carloads were paid for two days after being shipped. Thereafter, that is, on Friday, the 10th of September, defendant had three carloads of lumber hauled from his mill and stacked beside the switch at McIntyre Station, ready to be loaded. As the next following day was pay day for his mill hands and log haulers, he 'notified plaintiff that he would need the money the next day for his pay roll. Plaintiff called at McIntyre Station and examined the lumber and complained that it was not “shipping dry.” He said that defendant had b.een shipping the lumber so green that the freight rates were “eating him up.” Defendant insisted that the lumber was shipping dry and proposed that plaintiff select whatever pieces of lumber he thought were not dry enough, and weigh them. Plaintiff then, in presence of several *479 witnesses, selected several pieces of lumber from the stacks and had them weighed. They were under the weight that had been agreed upon as “shipping dry.” Plaintiff then requested that defendant load two cars of the lumber. Defendant refused to load the lumber unless ifiaintiff would assure him that it would be paid for that evening, so that he could meet his pay roll the next day. Plaintiff assured defendant that payment would be made that evening, on presentation of a tally of the lumber loaded. Defendant loaded the two cars of lumber that day, and sent his son with the tally of the lumber to the neighboring town in which plaintiff resided. After diligent search, the young man was unable to find plaintiff. Defendant went early the next morning, with the tally of lumber, to the town in which plaintiff resided, but was unable to find him. Defendant was then informed by plaintiff’s wife that he had gone to Arkansas. Defendant returned to his mill and notified his employés and the log haulers that he had not collected for the lumber and was therefore unable to pay them. On the following Tuesday, the 14th, defendant went to Shreveport, with the hope of selling the lumber to a dealer there for cash. The dealer agreed to go to the mill and inspect the lumber, but, on plaintiff’s return to his mill that night, he discovered that the two carloads of lumber, together with another car which he had loaded in the meantime, had been shipped. He telephoned to the Shreveport man the next morning that the lumber was gone. Plaintiff did not pay for the three cars of lumber until the 25th of September, 15 days after the cars were loaded, 11 days after they were shipped. In the meantime, defendant had succeeded in borrowing enough money to meet the past due pay roll and to pay the log haulers. But they had become dissatisfied, had lost confidence in defendant’s ability to pay them promptly, and several of them refused to return to work. Defendant endeavored to resume operations at his mill but was so short of labor and log haulers that he, could only run the mill a day and a half. Thereafter the mill remained idle for 27 days, at the end of which time defendant sold the mill and went out of business. In the meantime, he had delivered to plaintiff another carload of the lumber on hand, which was not paid for until 7 days after it was shipped. None of the lumber manufactured at defendant’s mill was sold or delivered to any one except to plaintiff and to a purchaser designated by him. Our conclusion is that defendant was not responsible for his inability to fulfill his contract. It is well settled that a buyer cannot maintain an action for damages for the seller’s failure to fulfill a contract to sell and deliver goods, if the buyer was in default by failing to pay promptly, at the time stipulated, for the goods that were delivered under the contract. Sitman & Burton v. Lindsey, 123 La. 53, 48 South. 646; Silverman v. Caddo Gas & Oil Co., 127 La. 928, 54 South. 289; Murphy v. Southern Mineral & Land Improvement Co., 130 La. 914, 58 South. 766; Godchaux v. Chicago Lumber & Coal Co., 131 La. 112, 59 South. 33; Bryan v. Holland, 137 La. 512, 68 South. 845.
Defendant does not ask, in his answer to plaintiff’s appeal, that the judgment of non-suit against plaintiff should be amended so as to reject his demand finally. The only ■ amendment prayed for is that defendant’s re-conventional demand should be allowed. Our conclusion is that the evidence does not support the demand. It is very doubtful that defendant would have made a profit if he had fulfilled the contract. His calculation in that respect is based upon unreasonably low figures with regard to the cost of manufacturing the lumber and delivering it to the railroad switch.
The judgment appealed from is affirmed at appellant’s cost.
SOMMER VILLE, J., takes no part.