CHASEZ, Judge.
Chiquita Trinkets, Inc., brought suit on a contract with Mardi Gras Productions, Inc.; claiming $5,576.00 as a balance owing under the contract. From a judgment in favor of plaintiff, Chiquita Trinkets, Inc., in the amount of $5,534.85, defendant, Mardi Gras Productions, Inc., brings this appeal.
The contract is in the form of a letter of September 30, 1960, from defendant to plaintiff, as follows:
“This letter is written to confirm our telephone conversation of today regarding Vodoo Dolls.
“It is understood that you will deliver Voodoo Dolls as per sample at a cost of 8‡ each, this cost to include delivery to any point within the continental United States. We will pay you $2,000.00 upon signing of this letter of understanding and the balance of $6,000.00 thirty days after delivery. The first 100,000 dolls to be delivered, in full by November 5, 1960, with the first 25,000 delivered no later than October 25, 1960.
“If this is agreeable, please sign the copy of this letter and return to us. We will send the $2,000.00 by return mail.”
Plaintiff did not simply accept this letter as written, but marked in the margin “final shipment will leave Nov. 5”, signed the letter as amended, and returned it to defendant. Defendant obviously accepted this, modification, since it sent its check for the $2,000.00 payment stipulated.
Defendant wanted the dolls in question, for promotional purposes in connection.. *377 with the exhibition of a motion picture ■about to be released. Plaintiff knew that time was of the essence of the contract for ■defendant, who would have no use for the ■dolls except in connection with the motion picture; plaintiff explained that it modified the letter-contract as it did in order to protect itself on time, by stipulating shipment, rather than delivery, by November 5, 1960.
Plaintiff had to manufacture the dolls, and completed the job manufacturing the entire 100,000 dolls by November 5, and was ready to ship the dolls. But, except for 1,-000 dolls apparently ordered shipped on October 18, no shipping orders were given by defendant until towards the end of December.
The contract called for delivery at “any point within the continental United States”; and undoubtedly it was up to defendant to advise plaintiff where, and in what quantities, the dolls were to be delivered.
What had happened was that defendant ■experienced some delays in scheduling exhibition of its motion picture, to advertise and promote which it intended to use the dolls, and therefore did not need the dolls as early as they had required by the contract.
But plaintiff, who had changed November 5 in the contract from a final delivery date to a final shipment date, had not changed the contract provision that the first shipment was to be delivered no later than October 25
Believing, rightly or wrongly, it was obliged in all events to deliver 25,000 dolls by October 25, plaintiff in fact made a first ■shipment of 17,950 dolls to defendant in New Orleans on October 13. Defendant wired plaintiff on October 17, “Hold further shipments voodoo dolls for shipping instructions.” Plaintiff made another shipment of 1,000 dolls, presumably upon instructions from defendant, on October 18. Not having received further instructions, on October 27, plaintiff wired defendant “Request shipping address return wire.” On October 31, plaintiff wrote defendant, air mail, special delivery:
“We have contacted you a number of times by letter, wire, phone, and have received no shipping address. We are making this shipment with instruction to the truckers to contact you for further instructions upon arrival in New Orleans.
“It is absolutely imperative that you let us know about further shipments as we cannot hold this merchandise. We are trying to fulfill our agreement to the best of our ability and we would appreciate your cooperation.”
On November 1, defendant wired “Hold for shipping instructions. Will not accept merchandise.” On November 2, plaintiff wrote defendant, pointing out the trouble the rush production caused plaintiff, and urging defendant to let plaintiff know its position. Plaintiff suggested that if final shipment would not be required by November 5, plaintiff could adjust its production schedules. The letter concluded “Please have the courtesy to explain to us by letter or telephone exactly where we stand.”
Not having heard from defendant by November 7, plaintiff billed defendant for the entire 100,000 dolls, payable in full by December 5 (being 30 days after the contract’s shipment deadline). The bill stated the payments for the two shipments already made as due 30 days from the respective dates of shipment.
On November 9, plaintiff had its Florida attorney write defendant threatening suit.
On November 18, defendant wrote plaintiff’s Florida attorney, explaining that the president of defendant had been out of the city several weeks and therefore had not answered earlier. Defendant further explained that its exhibition schedule difficulty had been solved, and shipping instructions could be expected within a week. Defendant requested the “forbearance” of plaintiff until that time.
*378 Some telephone conversations between plaintiff’s president and defendant’s secretary-treasurer followed, and defendant claims that the contract was modified by verbal agreement during those conversations.
In any event, on December 29, plaintiff wrote defendant, again threatening a lawsuit.
Whether before or after the December 29 letter, defendant telephoned an order to plaintiff for the shipment of 17,000 dolls to California. Plaintiff refused to ship unless paid beforehand. Defendant wired plaintiff on January 6, 1961, expressing the position that it did not have to pay until 30 days after delivery, and that the original payment had more than paid for the total of 18,950 dolls already shipped; and defendant also threatened to consider its obligations under the contract terminated unless the shipment was made to California. Plaintiff answered by wire: “$2,000.00 is binder on total contract, not payment for shipment to date. Will ship upon payment of $1,523.22 long over due us.”
No payment was made by defendant, and no shipment was made by plaintiff. Each party claims the other refused to perform the contract.
The first question is whether the contract was modified by verbal agreement, which extended all its terms, expecially that of payment.
We are satisfied that there was no binding extension agreement. We consider defendant’s November 18 letter asking “forbearance” as properly characterizing the attitude of the parties. There is no testimony to suggest that plaintiff received consideration for an extension; certainly it had already performed its part of the contract except for shipping, and even under the alleged extention was still bound to ship at defendant’s call. Meanwhile, of course, it would suffer the detriment of having to provide storage for the dolls. We therefore must resolve the dispute from the original contract only.
While the contract provided for payment 30 days after the last delivery, plaintiff was bound, as an essential term of the contract, to be ready to ship the final shipment by November 5, 1960. The contract thus obviously contemplated payment in full by 30 days after the delivery of a shipment of November 5 ; allowing several days for delivery, the contract contemplated final payment by mid-December. Plaintiff produced the dolls and had them ready for shipment by November 5; and it was ready, willing and able to ship them. The only reason why it did not actually ship them was that defendant did not permit plaintiff to ship them, in spite of plaintiff’s repeated tender of shipment and request for shipping instructions.
Defendant’s failure to furnish shipping instructions could not defeat plaintiff’s claim for payment under the contract; otherwise plaintiff could unilaterally invalidate the contract. We believe that defendant likewise could not extend the time of payment by delaying to give shipping instructions. We construe the contract to require payment in full by mid-December of 1960.
Accordingly we conclude that the contract was passively breached by defendant by failure to pay by mid-December; and, whatever forbearance plaintiff may have exercised, by the end of December plaintiff was insisting on payment before any further shipments, thus putting defendant in default.
We consider plaintiff within its rights in refusing further performance unless defendant would perform. However, because plaintiff knew that time was still of the essence to defendant in its possible use of the dolls, in our view plaintiff’s refusal to deliver the dolls when defendant needed them constituted an election of remedy by; plaintiff. Plaintiff can no longer *379 insist on the contract price which included shipment, after it decided not to ship.
The evidence shows that two cents per doll was included in the price to cover shipping charges. Since 81,050 dolls were not shipped, the total contract price should be reduced by $1,621.00, bringing it to $6,379.-00. Defendants must be allowed credit for their $2,000.00 payment, reducing the amount to $4,379.00.
Plaintiff states it was not able to sell the dolls, since they were made specially for defendant’s purposes; however, it did actually sell some of them (to persons exhibiting defendant’s motion picture) for a total of $465.15, for which credit must also be given defendant.
Accordingly, the judgment appealed from should be and it is hereby amended by reducing the amount thereof to $3,913.85, and it is further amended to recognize defendant as owner of the remaining dolls; and as so amended, it is affirmed. Each party is to bear his own costs.
Amended and affirmed.