317 So.2d 227 (1975)
BUNGE CORPORATION, Plaintiff-Appellant,
v.
Cecil C. McGUFFIE, Defendant-Appellee.
No. 5095.
Court of Appeal of Louisiana, Third Circuit.
July 30, 1975.
Rehearing Denied August 28, 1975.
*228 Leo Boothe, of Smith, Taliaferro, Seibert & Boothe, Jonesville, for plaintiff-appellant.
Reeves, Lossin & Owens, by Jack F. Owens, Jr., Harrisonburg, for defendant-appellee.
Before FRUGE, DOMENGEAUX and WATSON, JJ.
WATSON, Judge.
Plaintiff, Bunge Corporation, a New York corporation, filed this suit against defendant, Cecil C. McGuffie, a resident of Catahoula Parish, Louisiana, to recover the sum of $5,187.61 in damages because of defendant's alleged failure to deliver 3,304.21 bushels of No. 1 yellow soybeans, the balance under a contract for 6,000 bushels at $3.81 a bushel.
Defendant McGuffie reconvened for the difference between the contract and market prices on 1,986.79 bushels delivered and the market price or, in the alternative, the contract price on the last three loads of beans he delivered to plaintiff, for which he was not paid.
The trial court rendered judgment releasing defendant McGuffie from performing the unfulfilled balance of the contract and ordering Bunge Corporation to pay defendant the contract price for the last three loads of beans which defendant delivered under the contract, $3,398.22.
All costs in the trial court were divided between plaintiff and defendant.
Plaintiff Bunge has appealed suspensively from the adverse judgment.
Defendant McGuffie has answered the appeal.
*229 Bunge Corporation filed a motion to dismiss the answer to the appeal on the ground that it was not timely, having been filed more than 15 days after the return date. LSA-C.C.P. art. 2133.
Defendant McGuffie contends that Bunge Corporation did not perfect its appeal because its petition for appeal did not bear a certificate of service on opposing counsel as provided in Rule VI, Section 2, Uniform RulesCourts of Appeal.
To first consider the procedural issues raised, the question of whether the answer to the appeal was timely filed is moot, since we find McGuffie entitled to no relief other than that granted by the trial court.
As to the contention that plaintiff's petition for appeal did not bear a certificate of service, this is not required by LSA-C.C.P. art. 1312. The petition for appeal is filed in the trial court, is not ". . . . filed originally in this court,. . ." and thus is not covered by Rule VI, Section 2, Uniform RulesCourts of Appeal.
Bunge Corporation contends that the trial court erred in releasing McGuffie from performance of the unfulfilled balance of the contract; in admitting parol evidence to vary a written contract between the parties; in denying Bunge damages for breach of contract; and in requiring Bunge to pay McGuffie for the last three loads of soybeans delivered.
Defendant McGuffie contends that the contract is invalid and that he should receive the fair market value of all the beans delivered under the contract rather than the contract price. Defendant McGuffie also contends that Bunge breached the contract by withholding payment for the last three loads of beans and that its action entitles McGuffie to damages. Last, defendant contends that all court costs in the trial court should be assessed against plaintiff Bunge, the trial court having erred in dividing them between the parties.
The facts are relatively simple. Jack Bonner; manager of the Bunge Corporation's Jonesville, Louisiana plant, contacted defendant McGuffie in Enterprise, Louisiana by telephone in February, 1973 and advised McGuffie that beans were $3.81 a bushel. Bonner then prepared Bunge Corporation's purchase contract No. 3808 which provided for 6,000 bushels of #1 yellow soybeans at $3.81 a bushel to be delivered at Jonesville, Louisiana in October and November. Bonner did not discuss the terms of the contract with McGuffie. This contract was signed by Florence K. Studebaker, a secretary and bookkeeper authorized to sign contracts for Bunge Corporation, and the contract and a copy were sent to McGuffie, the original requesting "Please sign duplicate and return". A copy of the purchase contract executed by defendant McGuffie on February 7, 1973, is in evidence as P-1. Bunge Corporation's leger sheet shows that defendant McGuffie failed to deliver 3304.11 bushels on this agreement. A letter in evidence as P-3 written by Bonner to McGuffie on November 18, 1973, states that it confirms McGuffie's advice to Bunge on November 17 that he would not complete delivery under his contract. The letter states that the market price of soybeans on November 17 was $5.38, and the difference between the contract and market prices due Bunge was $5,187.46.
The record also reflects that Bonner and McGuffie had a conversation in May, 1973. Bonner said they discussed whether or not McGuffie would be able to deliver under the contract because of crop conditions in the area, but that McGuffie did not cancel the contract at that time. Bonner emphasized that he was not aware until November 17 that McGuffie did not intend to fulfill the terms of the contract. McGuffie testified that he told Bonner in May that all his farm land was under water. According *230 to McGuffie, Bonner said that it would cost McGuffie $2800 to get out of the contract. McGuffie had everything mortgaged and no crop insurance and could not pay the $2800. McGuffie said he could have paid the interest on his farm mortgage if he had received payment for his last three loads of beans.
McGuffie farms 685 acres of land and had been selling beans to Bunge Corporation for six or seven years. According to McGuffie, when he first discussed contracting with them, a Mr. Hardy of Bunge asked how many acres he had in order to fix the amount of the contract. McGuffie said he did not deliver the balance of the beans under the contract because he didn't make them. The land was flooded and he was unable to plant or harvest. The Parish had been declared a disaster area by the President of the United States.
Both Bonner and McGuffie testified that McGuffie was not paid for his last three loads of beans, despite McGuffie's demand for payment. The beans were delivered prior to November 17. Bonner testified that he told Miss Studebaker not to pay for these beans after checking with his supervisor, Leo Ehlinger, in Rayville, Mississippi. The practice had been for payment to be made when the beans were delivered to the elevator.
It was stipulated that the market price of beans on November 17, 1973, was $5.38 a bushel.
The only other witness, Pastor Jack Crews of the New Ouachita Baptist Church, testified that he was a nextdoor neighbor of McGuffie and the water got to 62 feet above sea level in front of their houses. The entire area was described as a lake.
The Bunge Corporation's purchase contract[1] provides "Destination Weights & Grades To Apply". It has various conditions and terms which are part of the contract. Among these conditions and terms are the following:
"* * * * * *
3. Buyer reserves the right, without further notice to Seller, to cancel, extend time, or to fill here or elsewhere at Buyer's option, any contract not filled within contract time, and any loss resulting therefrom to be paid by Seller.
* * * * * *
12. Buyer's performance under this contract is contingent upon conditions beyond Buyer's control such as, but not limited to, labor disputes and disturbances, embargo delays, accidents, fire, delay or non-performance of carriers, acts of God, or war."
We do not find it necessary to consider the validity of the contract. McGuffie, despite his contention of its invalidity, performed under the contract until November 17 and apparently had no objection to it prior to that time. Although the contract has many terms making it more onerous to McGuffie than Bunge, the parties were mutually satisfied with it over a period of many years.
We find no error in the trial court's admission of parol evidence to ascertain the meaning of the contract and the intent of the parties, although we do not find it necessary under the facts presented to resort to parol evidence to interpret the contract. LSA-C.C. art. 1950.[2]
*231 The basic questions for decision are:
(1) whether McGuffie was properly awarded the value of the last three loads of beans delivered;
(2) whether McGuffie breached the contract entitling Bunge to damages; and
(3) whether court costs were properly assessed by the trial court.
By the uncontroverted evidence of all of the witnesses, McGuffie delivered three loads of beans to Bunge prior to November 17 for which Bunge refused to pay. Clearly, Bunge had no right to accept the beans and refuse payment. Although the contract does not state that payment was to be paid on delivery, there is no question that this was the custom. There is nothing in the contract to the contrary. Bunge had always paid on delivery and had an obligation to continue to do so. This was understood practice to the extent that Bonner checked with his superior before deciding not to pay McGuffie for his last three loads. Not only is McGuffie now entitled to the contract price of those beans, as awarded by the trial court, but Bunge's refusal to pay for the beans at the time of their delivery was a breach of the contract which excused McGuffie from any further deliveries. LSA-C.C. art. 2487 provides:
"Art. 2487. Delivery excused until payment of cash price
Art. 2487. The seller is not bound to make a delivery of the thing, if the buyer does not pay the price, and the seller has not granted him any term for the payment."
This article has been interpreted in many cases similar to the instant one to justify failure to make future deliveries under a contract. In Smith v. Anders, 148 La. 474, 87 So. 241 (1921), the Supreme Court stated the rule of law:
"It is well settled that a buyer cannot maintain an action for damages for the seller's failure to fulfill a contract to sell and deliver goods, if the buyer was in default by failing to pay promptly, at the time stipulated, for the goods that were delivered under the contract." 87 So. 243
In Bryan v. Holland, 137 La. 512, 68 So. 845 (1915), a case squarely in point to the instant appeal, plaintiff buyer sought damages for defendant seller's failure to deliver the balance of the timber due under a contract. It was held that since buyer had failed to pay seller the full amount due for the timber delivered, the buyer could not recover damages for the seller's refusal to further perform. To the same effect is J. H. Garrison & Son v. Sherill Hardwood Lumber Co., 156 La. 147, 100 So. 253 (1924).
Although Bunge attempted to place McGuffie in default by Bonner's letter of November 18, Bunge was itself in default when the letter was written. LSA-C.C. art. 1913 requires:
"Art. 1913. Tender of performance as prerequisite for putting in default
Art. 1913. In commutative contracts, where the reciprocal obligations are to be performed at the same time, or the one immediately after the other, the party who wishes to put the other in default, must, at the time and place expressed in, or implied by the agreement, offer or perform, as the contract requires, that which on his part was to be performed, otherwise the opposite party will not be legally put in default."
"There may not be a putting in default where the party who attempts to put the other in default has himself breached the contract by failure to make payment." Williams Lumber Co. v. Stewart Gast & Bro., 21 So.2d 773 at 779 (La.App.Orl. 1945); writ denied.
*232 Under the circumstances, we find no merit to defendant McGuffie's claim for damages from Bunge, and we find that the trial court correctly awarded McGuffie judgment for the three loads of beans.
We find the apportionment of costs by the trial court to be within its discretion.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of the appeal are assessed against plaintiff-appellant, Bunge Corporation.
Affirmed.
NOTES
[1] The printed contract was furnished by Bunge and is, apparently, a standard form used by this large corporation in several states. The record indicates the form has been amended for current use. (TR. 63)
[2] LSA-C.C. art. 1950

"Art. 1950. Common intent prevails over literal sense of words
Art. 1950. When there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms."