339 So.2d 413 (1976)
CAST-CRETE CORPORATION
v.
WEST BARO CORPORATION and Charles Carter and Company, Inc.
No. 10860.
Court of Appeal of Louisiana, First Circuit.
September 20, 1976.
Rehearing Denied November 15, 1976.
Writ Refused February 1, 1977.
*414 Paul M. Hebert, Jr., Baton Rouge, for plaintiff-appellee.
George L. Clauer, III, Walton J. Barnes, II, Walton J. Barnes, Barnes & Barnes, Baton Rouge, for defendant-appellant.
Before LANDRY, COVINGTON and PONDER, JJ.
PONDER, Judge:
On March 12, 1974, Charles Carter & Company, Inc., (Carter) defendant-appellant, sent a letter to Cast-Crete Corporation, (Cast-Crete), plaintiff-appellee, requesting that the latter bid on furnishing the second floor slab and roof joists for a motel that Carter was constructing as general contractor. After various communications, Cast-Crete prepared shop drawings for their bid and on March 21, 1974, Ragan, Cast-Crete's representative, came from Florida to Carter's office in Baton Rouge. Marix, a superintendent of Carter, escorted Ragan to the construction site and introduced him to Durand, Carter's job superintendent on the motel job. Ragan, Marix and Durand discussed the second floor slab and roof joists, but according to Marix and Durand, no decision was made at that point as to whether Cast-Crete would pre-cut the necessary plumbing holes in the concrete. In any event, after Ragan and Marix returned to Carter's office, Marix signed Cast-Crete's shop drawings, "approved for fabricationJoe H. MarixCharles Carter Co." The drawings did not show any holes for plumbing.
On the same date, Cast-Crete bid $51,564.00 to provide the slabs and joists "as detailed on Cast-Crete's shop drawings dated March 21, 1974." Payment was stated to be twenty days from date of invoicing. The bid contained an approval block for Carter, but this was never executed. Instead, Carter issued a purchase order on the same date for the same amount with payment stated as being due 30 days after receipt.
It was made clear to Cast-Crete that Carter's time schedule was extremely tight. *415 Shipments began April 25, 1974, and continued until July 11, 1974. Invoicing occurred when the slabs and joists were shipped. On May 8, 1974, Carter notified Cast-Crete that his architect needed additional information before the shop drawings could be approved. No mention was made of the lack of plumbing holes in the plans. Carter made one payment on June 12, 1974, but only for items delivered through May 25, 1974.
On July 8, 1974, Carter sent Cast-Crete an invoice representing the costs incurred in cutting the plumbing holes. On July 19, 1974, Cast-Crete by letter notified Carter that payment for items shipped from May 25 to June 25 had not been received. On July 23, 1974, Cast-Crete notified Carter that "Due to your position on these matters, all shipments to your job have been stopped. They will not resume until we have received payment for the full amount of our contract . . . less prior payment received . . .". At this point, Carter had received $17,332.11 worth of slabs and joists that it had not paid for. There were only $4,038.75 worth of joists left to be shipped under the contract. These joists had already been manufactured by Cast-Crete.
Carter manufactured 96 joists at the job-site and completed the motel. On November 14, 1974, Cast-Crete filed a lien affidavit against the motel property and a suit against Carter and the owner of the motel to enforce the lien. Subsequently, after a lien bond was filed, Insurance Company of North America (ICNA), the surety thereon, was substituted for the owner as a defendant. Carter reconvened alleging that the concrete slabs were not in accordance with the plans and specifications, and that Cast-Crete refused to deliver all the joists. Carter demanded $3,046.46 for handling and storage expenses allegedly incurred when the slabs and joists were allowed to stay on railroad cars because of shipment without advance notice to Carter, $11,098.19 for altering the slabs and joists, $1,850.00 liquidated damages, and $2,500.00 attorney fees.
The court below found that Carter breached the contract by stopping payments, and that therefore Cast-Crete was justified in discontinuing deliveries. Judgment was signed in favor of Cast-Crete against Carter and ICNA, in solido, in the amount of $21,370.80 with legal interest, costs of court and costs of filing of the lien. The reconventional demand of Carter was dismissed. Carter and ICNA have timely appealed. We amend and affirm.
Carter specifies that the trial court erred:
1. In finding that Marix was impliedly authorized to sign the shop drawings;
2. In finding that Cast-Crete was justified in not delivering the remaining materials called for in the agreement and in demanding payment in full prior to shipment;
3. In finding that Cast-Crete is entitled to recover the price of the undelivered items; and,
4. In finding that Carter is not entitled to reimbursement for the expense of manufacturing joists at its site in lieu of the joists that Cast-Crete refused to ship.

SPECIFICATION ONE
Carter's contention that Marix did not have authority to sign the shop drawings is untenable. It is obvious that Ragan was led to believe that Marix held a position of authority with Carter. Marix had a desk across from the company's vice president. It was Marix who performed the managerial function of escorting Ragan to the jobsite. Marix also participated in the discussions as to whether or not there would be holes in the slabs and joists. Marix "approved for fabrication" the shop drawings.[1] Certainly the situation indicated that Marix had authority.[2] See Dart Distributors, Inc. v. Foti Enterprises, Inc., *416 271 So.2d 705 (La.App. 1st Cir. 1972) and United States Fidelity & Guaranty Co. v. Dixie Park and Service, Inc., 262 La. 45, 262 So.2d 365 (1972) for application of the implied authority doctrine.
Carter's contention that the shop drawings were never approved is contradicted by the testimony of Charles Carter himself, who acknowledged that the shop drawings were approved by his architects, admittedly the proper party, on July 1, 1974.
Thus, it is clear that the shop drawings formed part of the contract, and that the manufacturing of the slabs and joists without holes for plumbing was proper.

SPECIFICATION TWO
This specification puts at issue who breached the contract. Did Cast-Crete breach the contract by refusing on July 23, 1974, to deliver the remaining $4,038.75 worth of joists until it was paid in full, or had Carter breached the contract earlier?
It is evident that at least by July 8, 1974, Carter had breached the contract. On that date, it formally notified Cast-Crete that Cast-Crete was responsible for $3,538.92, representing the amount that Carter allegedly paid to have holes drilled in the slabs and joists. This attempted set-off or back charge was unjustified because, as discussed above, Cast-Crete provided the correct items in accordance with the approved drawings, i.e. without holes. Therefore, Cast-Crete was not liable for Carter's additional expense. It is clear that at least $12,000 in payments for items shipped May 27, 1974, through June 21, 1974, were more than 30 days past due when Cast-Crete notified Carter on July 23, 1974, that no more shipments would be made until payment in full was received. In spite of numerous demands by telephone for payment and the July 18, 1974, letter requesting payment, it is obvious that Carter was withholding any payment until Cast-Crete recognized the $3,538.92 back charge. Under these circumstances, Cast-Crete was justified in refusing to ship the remaining joists.[3]

SPECIFICATION THREE
Carter argues that Cast-Crete cannot recover the price of the undelivered items. We have found that Cast-Crete stood ready to make delivery, and actually offered to do so, conditioned only upon prior payment. Carter had already breached the contract by failing to pay for previously delivered items. Under these circumstances, we cannot say that Cast-Crete had to deliver the items to recover the price of the undelivered items. Tender would have been a vain and useless thing. The cases of Minden Hardware and Furniture Company v. Hartman, 16 La.App. 456, 134 So. 302 (2nd Cir. 1931) and Boelto v. West, 185 So. 471 (La.App.Orl.1939) cited by Carter are inapplicable. Instead, see Chiquita Trinkets, Inc. v. Mardi Gras Productions, Inc., 164 So.2d 375 (La.App. 4th Cir. 1964) writ denied 246 La. 718, 167 So.2d 301.
The undelivered items were manufactured specifically in accordance with the specifications of the shop drawings. Testimony established that the undelivered joists could not be used in any different construction. Therefore, Cast-Crete will not be able to re-sell the items and so recoup its loss.

SPECIFICATION FOUR
Our holding that Cast-Crete was justified in withholding shipment, above, is dispositive of Carter's contention that it should be paid the cost of manufacturing the needed joists.
The judgment below was cast against the Insurance Company of North America *417 (surety) and Carter, in solido, in the amount of $21,370.80. Cast-Crete acknowledges on appeal that this was erroneous as $4,038.76 of materials were not delivered to the job.
Accordingly, for the above reasons, the judgment of the lower court is amended, so that, there be judgment in favor of plaintiff and against Charles Carter and Company, Inc. and Insurance Company of North America, jointly and in solido, in the sum of $17,332.04 and against Charles Carter and Company, Inc., in the further sum of $4,038.76; together with legal interest from date of judicial demand until paid, all costs of court, including $25.00 for preparation and recording the lien filed herein.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] Ragan testified that Hayes was present when Marix signed the drawings.
[2] Carter argues that the apparent authority must be manifested in the presence of the person relying thereon. We find that Marix's authority was evident to Ragan and that Carter created the situation.
[3] Carter's argument that Cast-Crete's July 23, 1974, letter constitutes anticipatory breach is unfounded. Carter actively breached the contract by attempting the $3,538.92 back charge and again breached the contract by failing to pay for previous shipments after demand by Cast-Crete. Cast-Crete was ready and able to ship the remaining items, but for, Carter's breach. See Smith v. Anders, 148 La. 474, 87 So. 241 (1921) and Bunge Corporation v. McGuffie, 317 So.2d 227 (La.App. 3rd Cir. 1975) where it was held that the refusal to pay promptly for past shipments allows the seller/shipper to discontinue shipments until paid.