LANIER, Judge.
This is a suit seeking damages for breach of contract. The plaintiff-appellant, T & J Services, Inc. (T & J),[1] alleged that Hall-Buck Marine Services Company (Hall-Buck) entered into a contract with it to deliver 11,785 tons of crushed limestone at a price of $7.85 per ton, that Hall-Buck breached this contract by failing to deliver the number of tons contracted for, that T & J was required to purchase some crushed lime *1383 stone at a price of $9.90 per ton to meet its needs, and that Hall-Buck was indebted to it for the difference between the two purchase prices that T & J was required to pay totaling $12,189.30. La.C.C. arts. 1907 and 2458. The trial court ruled that the agreement between the parties was a contract to purchase and not a completed sale and dismissed T & J’s petition with prejudice. This devolutive appeal followed.
I. FACTS
On April 27, 1978, Munoz and Associates Contractors, Inc. (Munoz) submitted a bid to Illinois Central Gulf Railroad Company (ICG) for construction of a new railroad embankment. Munoz was the low bidder and was awarded the contract by ICG on May 15, 1978. Munoz then subcontracted the entirety of the job to T & J.
Prior to this time, Steve Faucheux of T & J contacted Steve Daigle, the vice-president in charge of traffic and sales for Hall-Buck, to get a quotation for the cost of crushed limestone to be used as ballast under the tracks and cross-ties on the railroad embankment. Daigle advised Faucheux that Hall-Buck would sell the amount of limestone required at a price of $7.85 per ton at the Hall-Buck landing in Geismar, Louisiana. On June 9, 1978, T & J issued a purchase requisition to Hall-Buck for 12,000 tons of limestone. During the period of September 2 through 5 of 1978, Hall-Buck brought 11,785 tons of crushed limestone to its landing in Geismar, Louisiana, and placed it in a segregated pile dedicated for the use of T & J. On September 5, 1978, Hall-Buck issued invoice No. 249/78 to T & J for the 11,785 tons at $7.85 per ton, eq-ualling a price of $92,512.25, plus 5% sales tax of $4,625.61, for a total invoice price of $97,137.86.
When invoice No. 249/78 was not paid by October 5,1978, Steve Daigle contacted Steve Faucheux concerning payment of the bill on several occasions. Eventually, Daigle was advised that Faucheux had left T & J’s employment. Daigle then attempted to contact Joe Romano, the owner of T & J, but was unsuccessful. Daigle then contacted representatives of ICG and Donald Clement and advised them that if no satisfactory agreement was reached on payment of the purchase price of the limestone, that the material would be sold to minimize losses.
After receiving Daigle’s call, Clement contacted Romano concerning payment of the purchase price of the limestone. Romano advised Clement that he could not pay the price until Munoz paid him. Clement testified that Munoz could not pay the price until ICG paid it. Clement then contacted ICG who agreed to pay 60% of the purchase price.
On November 15, 1978, Hall-Buck commenced selling crushed limestone from the stockpile dedicated to T & J. On November 17, 1978, ICG issued a check for $57,712.50 to Hall-Buck, T & J and Donald M. Clement Contractors, Inc., which sum represented the purchase price of 7,000 tons of crushed limestone at $7.85 per ton.[2]
At the end of November or beginning of December in 1978, Daigle again called Clement demanding payment of the purchase price. Daigle advised Clement that the price of limestone was going up because of market conditions. During the period between November 15, 1978, and December 28, 1978, Hall-Buck sold 1,977 tons of the limestone stockpiled for T & J at $7.85 per ton. On January 10,1979, Hall-Buck issued a credit invoice to T & J giving it credit of $16,295.42 against the original purchase price for these sales.[3]
On January 10, 1979, Hall-Buck also sent a letter to T & J demanding payment for the balance due on the original contract price of $23,129.94. Hall-Buck demanded payment not later than January 11, 1979, and had the letter hand carried to T & J’s office. Hall-Buck advised T & J that if it *1384 failed to pay the balance due by January 11, that it would sell the remaining 2,808 tons of limestone, which had not been paid for, leaving only 7,000 tons dedicated to T & J. Hall-Buck further advised T & J that effective January 15, 1979, it would cost T & J $9.90 per ton to acquire additional limestone. T & J made no payment on the purchase price.
On January 12 and 13, 1979, Hall-Buck sold an additional 2,447.5 tons of the limestone dedicated to T & J, leaving a balance of 7,360.5 tons dedicated to T & J’s use. By letter dated January 17, 1979, Hall-Buck advised T & J of these transactions and provided it with sale tickets for all sales of limestone dedicated to T & J for the period of November 15, 1978, through January 13, 1979.
Apparently after January 17, 1979, but prior to January 29, 1979, Munoz made demand on T & J to complete the job. Romano of T & J advised that it could not pay for the limestone at the increased price and on Donald Clement’s suggestion, assigned all of its rights to Donald Clement Contractors, Inc. Hall-Buck was contacted for additional limestone, but agreed to make the sale only if payment was guaranteed by ICG within thirty days of delivery at a price of $9.90 per ton. During the period of January 29, 1979, through February 23, 1979, Hall-Buck delivered 5,901 tons of limestone to T & J at a price of $9.90 per ton for a total purchase price of $60,756.69. Hall-Buck was paid by ICG on March 6, 1979. This litigation followed.
II. WAS THE AGREEMENT BETWEEN T & J AND HALL-BUCK A SALE?
The trial judge ruled that the agreement between Hall-Buck and T & J was not a completed sale, but was an agreement to sell and that Hall-Buck was thus not obligated to deliver that portion of the contract amount that had not been paid for.
A sale is an obligation to give by which one gives a thing for a price in current money, and the other gives the price to acquire the thing. La.C.C. arts. 1905 and 2439. A sale is completed and the title to the property which is the subject of the sale is acquired by the purchaser when there is an agreement for the object and the price, even though the object has not been delivered nor the price paid. La.C.C. arts. 1803, 1909, 2439, and 2456; Flatte v. Nichols, 233 La. 171, 96 So.2d 477 (1957); Robinson v. Jackson, 255 So.2d 846 (La.App. 2nd Cir.1971), writ denied 260 La. 700, 257 So.2d 155 (1972). In the instant case, Hall-Buck agreed to sell and T & J agreed to purchase II,785 tons of limestone at $7.85 per ton for a total purchase price of $97,137.86. This agreement consummated an act of sale between the parties. The ruling of the trial court that this agreement did not constitute a sale is clearly wrong.
III. DID HALL-BUCK LAWFULLY REFUSE TO DELIVER LIMESTONE WHICH HAD NOT BEEN PAID FOR?
The appellant argues that since there was a consummated sale between the parties, that the ownership of the limestone was in T & J and that Hall-Buck breached its contract by failing to deliver the specified quantity of limestone at the price agreed upon.
Steve Daigle testified that Steve Fau-cheux, on behalf of T & J, verbally agreed that T & J would pay for the limestone within thirty days of invoicing. Daigle further testified that delivery of the limestone was postponed until September of 1978 to coordinate the off-loading of the limestone at the Hall-Buck landing in Geismar, Louisiana, with the payment. This testimony stands uneontradicted in the record.[4]
The buyer in a contract of sale is obligated to pay the price of the sale and to receive delivery of the object of the sale and remove it. La.C.C. art. 2549. If the *1385 buyer fails to pay the price of the sale at the time agreed upon, the seller has alternative remedies for enforcement of the terms of the contract or for its dissolution. La.C.C. arts. 2561 and 2564; Sliman v. McBee, 311 So.2d 248 (La.1975). In the instant case, T & J failed to pay the price of the limestone within the time period agreed to by the parties and thus breached its contract with Hall-Buck.
Pursuant to La.C.C. art. 2487, a seller is not bound to make delivery of the object of the sale if the buyer does not pay the price and the seller has not granted him any term for the payment. In the instant case, Hall-Buck did grant T & J a term of thirty days from invoicing to pay the purchase price and Article 2487 thus would not be applicable during that time period. However, after the term granted for payment expired and since T & J did not receive delivery of the limestone and remove it from the Hall-Buck landing in Geismar, Louisiana, prior to the end of the term, Hall-Buck became authorized to withhold completion of delivery until the price was paid after October 5,1978. A buyer who is in default by failing to pay the purchase price at the time agreed upon cannot maintain an action for damages for the seller’s failure to fulfill a contract of sale. Smith v. Anders, 148 La. 474, 87 So. 241 (1921); Louisiana Farm Bureau Rice, Inc. v. Miller, 389 So.2d 840 (La.App. 3rd Cir.1980); Bunge Corporation v. McGuffie, 317 So.2d 227 (La.App. 3rd Cir.1975).
IV. CONCLUSION
For the foregoing reasons, the judgment of the trial court dismissing the petition of T & J with prejudice is correct and is affirmed at the appellant’s costs.
AFFIRMED.

. By a supplemental and amending petition, Donald M. Clement Contractors, Inc. and Munoz and Associates Contractors, Inc. were added as parties plaintiff. At the trial, the parties stipulated that all of the rights of T & J had been assigned to Donald M. Clement Contractors, Inc.

. This left a balance due on the purchase price of $39,425.36, representing 4,785 tons at $7.85 per ton.

. This left a balance due on the purchase price of $23,129.94, representing 2,808 tons of limestone at $7.85 per ton.

. Only two witnesses testified at the trial, Steve Daigle and Donald Clement. Clement testified that he was not familiar with the arrangements between T & J and Hall-Buck. Steve Faucheux and Joe Romano were not called as witnesses at the trial.