TOLEDANO *vs.* KLINGENDER.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

To Justify payment to a broker, the purchaser is bound to show either a general custom or a special authority from the vendor to receive payment.

In the absence of proof of any authority in a broker to receive payment for the seller, or of any act from which such authority can be presumed, the buyer who pays must sustain the loss, in case the broker fails to pay over the money.

On the 2d January 1834, Toledano sold to F. Klingender fifty bales of cotton, weighing 23363 pounds, at ten and a half cents per pound, amounting to two thousand four hundred and fifty three dollars and eleven cents, on which one thousand five hundred dollars was paid, and the balance of nine hundred and fifty three dollars and eleven cents which the purchaser had advanced to one Rareshide, a broker who purchased the cotton, the latter failed to pay it over and absconded. The plaintiff, Toledano, called on the defendant, Klingender, for the balance of the price of his cotton who refused to pay it, stating it had been paid to the broker on plaintiff's account, and he must look to the broker for it.

The defendant in his answer denies being indebted to the plaintiff; admits the purchase of the cotton, but says it was done through his agent, H. C. Gildemeester, by one John Rareshide who acted in said sale as the agent and broker of the plaintiff, and was authorised by him to make said sale and receive the price thereof; and that he has paid the entire price of said cotton through his agent to Rareshide, who has paid the whole or a part thereof to the plaintiff.

The broker on making the purchase of this cotton gave the following order to the keepers of the cotton press where it was stored:

"Fifty bales of cotton bought of C. Toledano, for account of F. Klingender, marked, &c."

"New-Orleans, 26th January 1834."

"John Rareshide."

According to the testimony of the cotton brokers this was the usual order given on account of the buyer to transfer the cotton to his name on the books of the cotton press.

The testimony showed that the broker called on Toledano and offered to purchase his cotton, and in the course of his negotiation disclosed the name of the defendant for whom he purchased.

*Gottschalk*, clerk of defendant's agent, and witness for him, states that the plaintiff called on the agent of defendant for the balance of the price of the cotton, and admitted he had authorised Rareshide to sell it.

*John Linton*, merchant, testified that it was his custom to settle with the principal and not with the broker.

*Rhodes*, is a merchant, and sells cotton consigned to him, and he has with one or two exceptions, always settled with the purchaser and not through the broker who makes the sales.

*E. Forstall*, witness for defendant, is a cotton broker; says it is the practice of some purchasers to pay the proceeds to the broker, but some houses only pay the brokerage to the broker, and settle with the factor or seller, and that he receives more that way than any other broker, as he frequently advances his own money before the cotton is weighed. Some factors occasionally sell for less, say a quarter of a cent, to get money before three o'clock.

They send to the buyer and get money before the cotton is weighed; the money in these cases is generally paid to the broker. He says there are fifty or sixty brokers in New-Orleans; the practice of paying depends on the personal character of the broker. Many brokers never receive any money, many receive the checks to order, or not all; and some of the largest brokers act in this way.

The district judge considered that Gildemeester the agent of the defendant, who advanced the money to the broker

in a free check, placed an unnecessary and improper confidence in him, and that the loss must fall on the defendant. Judgment was rendered for the amount claimed. The defendant appealed.

*Eustis*, for the plaintiff.

1. Urged that the broker had no authority to receive the money from defendant on account of the plaintiff.

2. By entrusting the broker with the money which he was not authorised to receive, the broker became the agent of the defendant, and the plaintiff is not liable for his acts.

3. The broker, Raréshide, was not employed by the plaintiff, but by the defendant, who is alone responsible for his acts.

*Conrad*, contra:

BULLARD, J., delivered the opinion of the court.

This case presents the single question, whether the payment of the price of a lot of cotton to a broker, who effected the sale and purchase of it, be a good payment and binding on the plaintiff as vendor.

According to the *Louisiana Code* "the broker or intermediary is he who is employed to *negociate* a matter between two parties and who for that reason is considered as the mandatory of both," *art.* 2985. It is only in facilitating the transaction of business in relation to the sale and purchase of produce, that the broker is considered as the common agent of the parties: the channel of communication between them. For any other purpose he is not regarded by law as the agent of either party. To justify a payment therefore made to a broker, a purchaser is bound to show, either a general custom, or a special authority from the vendor to receive payment.

*To justify payment to a broker, the purchaser is bound to show either a general custom or a special authority from the vendor to receive payment.*

The evidence in the record certainly does not establish a custom, and the weight of evidence is the other way. Many

extensive dealers state that their practice is not to pay the broker; and when they do so, it is in consequence of their confidence in him personally. E. Forstall a broker states in his testimony that it is the practice of some purchasers to pay the proceeds to the broker or intermediary, but some houses only pay the brokerage to the broker and settle with the factor. Witness receives more in that way than any other, as he frequently advances his own money before the cotton is weighed. *The factor sometimes sells for less, say a quarter of a cent, to get money before three o'clock.* The money in such cases is generally paid to the broker.

But it is contended that Raréshide was not merely a broker but that he was authorised by the plaintiff to sell, and consequently to receive payment of the price. We have no doubt he represented himself to each party as the broker of the other, and his subsequent conduct justifies the belief, that he was capable of deceiving both. It is clearly established that this transaction was the first and only one in which he had ever acted for the parties. He was therefore personally a stranger to both. But what is the evidence that Toledano authorised him to act in any other way than as a broker? that he constituted Raréshide his agent in any other sense of the word. A clerk of the defendant's agent testifies that when Toledano called on Mr. Gildemeester for the balance of the price of the cotton, he did not dispute having authorised Raréshide to act as his broker in the sale of the cotton, on the contrary he admitted he had authorised him to sell it. Mr. Gildemeester does not go quite as far in his testimony. But even the statement of Gottschalk does not state that Toledano regarded the broker as any thing more than a broker. Laying out of view the subsequent declarations of Raréshide, which we do not consider legal evidence or as forming a part of the *res gesta* his acts so far as they are evidenced by writing would exhibit him rather as purchasing for the defendant than as selling for plaintiff. The order on which the cotton was delivered at the press is as follows: "fifty bales of cotton *bought of* C. Toledano for account of F. Klingender, &c." In making out the invoice he charged the defendant with

brokérage. In a case balanced as this is, if it were shown that the defendant was induced to pay the broker by any act of the plaintiff, we should think the loss ought to fall on him. But in the absence of proof of any authority in the broker to receive payment, or of any act from which such authority might be presumed, we are of opinion that the defendant acted without due caution, and equity requires that he should sustain the loss.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be affirmed with costs.

*Eastern Dis.*
*June, 1834.*

In the absence of proof of any authority in a broker to receive payment for the seller, or of any act from which such authority can be presumed, the buyer who pays must sustain the loss, in case the broker fails to pay over the money.