325 So.2d 870 (1976)
SOUTHWEST MOTOR LEASING, INC., Plaintiff-Appellant,
v.
MATTHEWS LUMBER COMPANY OF MANSFIELD, INC., Defendant-Appellee.
No. 12791.
Court of Appeal of Louisiana, Second Circuit.
January 6, 1976.
Rehearing Denied February 9, 1976.
*871 Skeels, Baker & Coleman by Donald L. Baker, Shreveport, for plaintiff-appellant.
Colvin, Hunter, Brown & Plummer by Robert E. Plummer, Mansfield, for defendant-appellee.
Before BOLIN, HALL and GLADNEY, JJ.
Rehearing En Banc, Denied, February 9, 1976.
HALL, Judge.
This is an action for rental allegedly due under a lease contract whereby plaintiff, Southwest Motor Leasing, Inc., leased to defendant, Matthews Lumber Company of Mansfield, Inc., a 1971 Cadillac automobile. The lease was negotiated by a third person, Jack Clothier, who delivered the leased vehicle to the lessee, received from the lessee an advance payment of rental, and failed to remit same to the lessor. The district court in a comprehensive written opinion rejected the demands of plaintiff, expressing the opinion that plaintiff clothed the third person, a broker, with indicia of authority to receive payment and, thus, payment to the broker by means of a check payable to the broker discharged the lessee's obligation to the lessor.
Plaintiff appealed. For the reasons expressed in this opinion we affirm the judgment of the district court.
In the spring of 1971, Frank Matthews, President of the defendant corporation domiciled in Mansfield, Louisiana, expressed to his son a desire to rent a Cadillac automobile. The son contacted Gordon Allen Leasing Agency in Dallas from whom the son had previously leased a car. Jack Clothier, who formerly worked for the Dallas agency, learned of Matthews's interest in leasing an automobile and on his own proceeded to put a deal together. Clothier contacted a company in Houston which was at first interested in the deal but later decided against it for reasons of its own. Clothier then contacted the plaintiff company which is engaged in the business of leasing automobiles in Houston. After making an investigation, plaintiff determined it would be willing to enter into a lease arrangement with defendant. Plaintiff delivered to Clothier the Cadillac automobile, a lease agreement signed by an employee of plaintiff to be signed by the lessee, a delivery receipt to be signed by the lessee, and an invoice for the deposit and rental payment called for under the terms of the lease agreement.
Clothier drove the automobile to Mansfield and presented the documents to Matthews. Matthews disagreed with some of the terms of the lease agreement and changes were made and initialed by him. The agreement called for a monthly rental of $212.32 and initial deposit of the same amount. The amount of the deposit shown on the form was changed from $212.32 to *872 $200. Although the amount shown on the form for the monthly rental was not changed it was clearly Matthews's intention that the monthly rental also be changed to $200. The mileage charge of $.05 per mile was scratched out and the free mileage was increased from 20,000 to 40,000 miles per year.
Matthews also insisted on paying one year's rental in advance, that is, $2,400 based on $200 per month. Clothier typed a new invoice from "Jack Clothier, Leasing Broker" to the defendant company for the first year full payment of $2,400 and upon receipt of payment marked the invoice "paid." Defendant gave Clothier a check in the amount of $2,400, payable to "Jack Clothier, Leasing Broker." Matthews signed the delivery receipt and took possession of the automobile.
Clothier cashed the check and remitted to plaintiff the sum of $566.24, being the amount called for by plaintiff's invoice plus one additional month's rental in the amount of $212.32. Clothier returned the original contract to plaintiff and plaintiff's manager initialed the changes made on the contract signifying his agreement with them. Clothier later made one additional payment in the amount of $212.10 to plaintiff.
Plaintiff began sending monthly statements to defendant for monthly rental in the amount of $212.32. Defendant got in touch with plaintiff and informed it that the first year rental had been paid in full in advance. Meetings were held thereafter between plaintiff's representatives and defendant's representatives but the situation could not be worked out. At the expiration of one year defendant requested plaintiff to pick up the automobile which plaintiff ultimately did. Both parties, particularly plaintiff, have made efforts to recover the money paid to Clothier and retained by him, but without results.
This suit followed. Plaintiff sued for the balance of rental allegedly due and for the cost of recovering the automobile and damages. Defendant reconvened for storage costs and damages. The district court rejected the demands of both plaintiff and defendant. Only plaintiff appealed.
The central issue in this case is whether plaintiff clothed Clothier with implied and/or apparent authority to accept payment of the lease rental. If he was clothed with such authority then payment to the agent constituted payment to the principal and the principal would be estopped from denying payment to its agent.
Appellant argues that Clothier was a "broker" and was not plaintiff's agent and that payment to a broker does not amount to payment to a principal in the absence of a special authority from the principal to the broker to receive payment.
LSA-C.C. Art. 3016 defines a broker as follows:
"The broker or intermediary is he who is employed to negotiate a matter between two parties, and who, for that reason, is considered as the mandatary of both."
The old but authoritative case of Toledano v. Klingender, 6 La. 691 (1834) discussed the authority of a broker in the following language:
"It is only in facilitating the transaction of business in relation to the sale and purchase of produce, that the broker is considered as the common agent of the parties: the channel of communication between them. For any other purpose he is not regarded by law as the agent of either party. To justify a payment therefore made to a broker, a purchaser is bound to show, either a general custom, or a special authority from the vendor to receive payment.
"* * *
". . . In a case balanced as this is, if it were shown that the defendant was induced to pay the broker by any act of the plaintiff, we should think the loss ought to fall on him. But in the absence *873 of proof of any authority in the broker to receive payment, or of any act from which such authority might be presumed, we are of opinion that the defendant acted without due caution, and equity requires that he should sustain the loss." (Emphasis supplied)
Consistent with Toledano and cited by the trial court in its reasons for judgment, is the following statement from 12 Am. Jur.2d, Brokers § 79 which statement is an accurate and concise statement of the law:
"Since a broker is usually given only such authority as is commensurate with the duty of negotiating a deal, he is generally deemed to have no implied power to receive payment in behalf of his employer, and a debtor of the latter making such payment does so at the risk of having to pay again in case the broker defaults. An exception to the foregoing rule prevails where the broker is clothed with the indicia of authority to receive payment, as where he is entrusted with possession of the goods to be sold or where the principal is not disclosed." (Emphasis supplied)
Clothier may not technically have been a broker as he was not actually "employed" by either party to negotiate the deal. It is interesting to note that neither party agreed to pay Clothier any commission or other compensation in connection with the transaction. Clothier testified he interested himself in the transaction in order to maintain a relationship with the Matthews in the hope of perhaps doing some future business. In any event, his classification as a broker is not the decisive issue. The decisive issue is whether Clothier had authority, implied or apparent, to accept payment of the lease rental on behalf of plaintiff.
Plaintiff delivered the automobile, the lease agreement, the delivery receipt and the invoice for the initial lease payment to Clothier for delivery to Matthews with instructions to collect the amount shown on the invoice. Clearly, Clothier was expressly authorized to accept payment on behalf of plaintiff of the initial payment. Authority to accept partial payment impliedly includes authority to accept full payment in advance of an entire year's rental. An implied agency is an actual agency. Busby v. Walker, 84 So.2d 304 (La.App. 2d Cir. 1955); Dart Distributors, Inc. v. Foti Enterprises, Inc., 271 So. 2d 705 (La.App. 1st Cir. 1972). We hold, therefore, that Clothier had actual authority, although not express, to accept payment from defendant.
Furthermore, Clothier had apparent authority to accept payment. The doctrine of apparent authority was expressed in Krautkramer Ultrasonics, Inc. v. Port Allen Marine Service, Inc., 248 So.2d 336 (La.App. 4th Cir. 1971), which held:
"Although the Louisiana Civil Code offers no express concept of apparent authority, this concept is well embedded in our jurisprudence, presumably in response to changing commercial needs.
"The doctrine of apparent authority requires (1) that the principal make manifestations to a third party in some form, and (2) that the third party reasonably rely on the agent's purported authority as a result of the manifestations of the principal."
The concept of apparent authority was expressed in Busby v. Walker, supra, as follows:
". . . With respect to third persons, an agency may arise from acts and appearances which lead others to believe that such a relationship has been created, that is, by estoppel, and with respect to such third parties who deal with the agent, the agency may be apparent only and exist because of the estoppel of the principal or agent to deny the existence of such relationship, if the third party has relied on such appearance so that he would be prejudiced if the fact were shown to be otherwise . . ."
*874 In the instant case Clothier, who was not Matthews's agent or employee and who Matthews had never met, appeared at Matthews's office with plaintiff's automobile, the documents prepared by plaintiff, including the invoice and with actual authority to collect the amount of the invoice. By entrusting these items and functions to Clothier, plaintiff clothed him with apparent authority to receive payment of the full year's rental in advance. Defendant relied and acted upon such apparent authority. Plaintiff is bound by defendant's payment to its agent, with implied and/or apparent authority, and is estopped from denying receipt of payment.
The case of Hearin v. Albin, 246 So.2d 274 (La.App. 1st Cir. 1971), which cited Toledano with approval, and which is cited by plaintiff in support of its position, is distinguishable in that in the Hearin case the person making payment knew that the agent or broker was not authorized to receive payment.
The judgment of the district court is correct and for the reasons assigned is affirmed, at appellant's costs.
Affirmed.