347 So.2d 327 (1977)
RADIOFONE
v.
OXFORD BUILDING SERVICES, DIVISION OF CONSOLIDATED FOODS CORPORATION.
No. 8105.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 1977.
*328 Peter A. Winkler, Jr., New Orleans, for plaintiff-appellee.
Kehl & Pickering, Gary A. Cotogno, New Orleans, for defendant-appellant.
Before SAMUEL, STOULIG and MORIAL, JJ.
STOULIG, Judge.
This is an appeal from a judgment ordering Oxford Building Services, division of Consolidated Foods Corporation, to pay $355.17 for services and equipment supplied by plaintiff, Radiofone, plus $100 attorney fees. Appellant denies liability on the basis that its employee who entered into the agreement on its behalf had no authority to bind the company.
On May 21, 1975, Mary Handley, a salesperson with Radiofone, received a telephone inquiry about the communication service plaintiff offered. She made an appointment to demonstrate the equipment at the corporate office of defendant maintained at the New Orleans International Airport to Bill Richard, defendant's project manager. Richard supervised the entire operation of defendant's furnishing janitorial services to the airport. He had 21 employees under his supervision and was subject to call on a 24-hour basis.
After the beeper communication equipment was demonstrated, Mrs. Handley filled in an application for Oxford Building Services, Inc., on which she noted the names of three corporation officers based in Atlanta and Malcolm Ellerworth, defendant's operations manager in New Orleans. Checking credit references is not Mrs. Handley's job; therefore, she could not attest to the procedure plaintiff's representative followed in this case. Customarily, she explained, the local reference would have been contacted to confirm that Richard was in fact employed as project manager. Because Malcolm Ellerworth did not appear as a witness the record does not explain if this was done. At the trial, Richard's employment in this capacity at the time the agreement was signed was confirmed by the corporation.
On May 23, 1975, William Richard signed a subscription agreement with plaintiff as the representative of Oxford Building Service. Mrs. Handley then gave Richard the radio paging unit that must be carried by the person to be contacted. Stamped on the agreement is a list of charges totaling *329 $139.25 presumably due at the signing of the contract. Richard gave Mrs. Handley his personal check for this amount. She explained that it was not unusual for Radiofone to accept personal checks for the initial payment when dealing with corporations. In due course, Richard's check was returned to plaintiff dishonored as NSF. Nonetheless Radiofone continued service for a period after the check was returned because the claim is itemized in this way:

 "Date Amount Billed
 5/23/75 15.00 hook up charge
 5/23/75 5.67 partial month charge
 6/1/75 24.25 service for June
 7/1/75 24.25 service for August
 8/1/75 286.00 bill for unit not returned.
TOTAL AMOUNT DUE: $355.17"

In denying liability defendant gave a lengthy and irrelevant explanation of its internal purchasing procedure to establish Richard's lack of authority. No one disputes the nonexistence of a principal-agent relationship insofar as this transaction is concerned. The issue is whether plaintiff might reasonably have assumed from the circumstances that Richard had authority to act for the corporation or whether its representatives had the obligation to verify with the defendant the agency relationship before it could be bound.
We conclude this case falls within C.C. art. 3000, which provides:
"Powers granted to persons, who exercise a profession, or fulfill certain functions, or doing any business in the ordinary course of affairs to which they are devoted, need not be specified, but are inferred from the functions which these mandataries exercise."
In dealing with Richard, Mrs. Handley demonstrated equipment to the manager of a 21-man, 24-hour operation in the corporation office maintained at the airport. It was not unreasonable for her to infer she was dealing with a representative of defendant clothed with authority to bind his company. Further, the communication service plaintiff furnishes would facilitate the operation of this type of business. Thus it cannot be said that Mrs. Handley was unreasonable in assuming Richard was "* * * doing any business in the ordinary course of affairs to which * * * [he was] devoted * * *." The rationale of United States F. & G. Co. v. Dixie Parking Serv., Inc., 262 La. 45, 262 So.2d 365 (1972), is appropriate here. The defense of lack of authority must fail because the defendant's manager was clothed with apparent authority to act on its behalf. Were we to require each business dealing with a corporation to be authorized by written resolution before recognizing its validity, we would impede the flow of commerce.
This is the underlying principle that guided the courts in Dart Distributors, Inc. v. Foti Enterprises, Inc., 271 So.2d 705 (La. App. 1st Cir. 1972), and Caston v. Woman's Hospital Foundation, Inc., 262 So.2d 62 (La. App. 1st Cir. 1972), to hold the corporations liable for contracts entered into by their unauthorized agents when the objects of the agreements were goods or services the corporation might require in the normal conduct of its business.
Appellant relies on a line of jurisprudence requiring the third party to inquire into the authority of the agent before entering into a transaction with his principal. For example, Federal Ins. Co. v. C & W Transfer & Storage Co., Inc., 282 So.2d 563 (La.App. 4th Cir. 1973), refused to validate a limitation of liability clause on a contract of bailment when the bailee's insurer declined payment for losing two oriental rugs. When the owner's maid handed the rugs to an employee of the bailee, she was handed a ticket with a limitation-of-liability clause printed on the reverse side. The court reasoned it was obvious the only authority the maid had from the owner was to turn over the rugs and not to enter into any limitation-of-liability agreements. Absent proof of the mandate to agree to the condition of bailment, the court would not enforce this provision. Of course, the insurer could not have relied upon the apparent authority rationale either.
Nor could C.C. art. 3000 have aided the creditor in Builders Center, Inc. v. Smith, 228 So.2d 245 (La.App. 1st Cir. 1969). A *330 contractor opened a charge account in the name of a man for whom he was building a house and charged a large quantity of materials he used in construction. The supplier made no inquiries to the owner to verify the contractor's authority and the owner did not authorize the account nor was he aware of it. In rejecting the supplier's claim on open account against the alleged principal, the court pointed out the supplier had the duty to investigate whether the purported agent had authority to act. The distinguishable factor is the contractor did not deal under circumstances from which a reasonable person could infer he had apparent authority to bind his alleged principal.
In Carey Hodges Assoc. Inc. v. Continental Fid. Corp., 264 So.2d 734 (La.App. 1st Cir. 1972), the court refused to honor a contract because there was no corporate resolution authorizing the agent to act. Plaintiff did preliminary survey work to obtain estimates for the construction, financing, and promotion of a racetrack. The principal for whom the work was performed did not wave the lack of authority flag until the service was completed. The crux of the principal's complaint was that the bill was too high, although it was pegged at 7 percent of the total cost before plaintiff began the work. The court held for the principal in a questionable application of C.C. art. 2997, which specifies certain mandate must be express. In that case the court reasoned the agent acknowledged a debt. It seems that the agent in reality contracted for services and he had previously dealt with plaintiff and bound his corporation.
We could reach an opposite result in this case by reasoning the agreement in question was the sale of a service and rely on that part of C.C. art. 2997, which requires authority to buy and sell to be express. But this would defeat the purpose of C.C. art. 3000. We note an inconsistency in the spirit in which our courts apply the apparent authority theory to validate contracts vis-a-vis the strict proof demand to defeat them.
We elect to apply C.C. art. 3000 to reason that the defendant is liable for all amounts due to plaintiff until the time Richard's check was returned with the NSF notation. Plaintiff was entitled to rely on the apparent authority of the project manager of the airport until something occurred that would cause a reasonable man to inquire further into the circumstances. Once the check was returned, plaintiff should have dealt on an arms-length basis. Having failed to do so, it should not be awarded a judgment for services rendered beyond that time. Accordingly we reduce the judgment by $24.25. It is clear from the record that the equipment was furnished and the monthly service and hookup charges otherwise claimed were due before plaintiff should have become aware of Richard's lack of authority.
For the reasons assigned, the judgment appealed from is amended to reduce the judgment from $355.17 to $330.92 and is affirmed in all other respects. Defendant is to pay all costs.
AMENDED AND AFFIRMED.