HALL, Judge.
A few weeks before plaintiff’s home was totally destroyed by fire, an officer of a bank which had a mortgage on plaintiff’s home and had in its possession a fire insurance policy issued by Insured Lloyds naming the bank as loss payee, caused the policy to be canceled by the insurance company. The issue on appeal in this suit by plaintiff *903 to recover the $10,000 amount of the policy from the insurer, or alternatively the bank, is whether the policy was effectively canceled by the insurance company. Resolution of the issue depends on whether the bank officer had express, implied or apparent authority to order the policy’s cancellation or whether plaintiff ratified the cancellation. The district court held plaintiff ratified the cancellation by failing to protest after receiving notice of the cancellation from the insurance agency. We disagree, finding no authority on the part of the bank officer, no effective notice of cancellation, and no ratification by plaintiff. Accordingly, we reverse and grant judgment in favor of plaintiff against the insurance company for the amount of the policy.
The essential facts are substantially as stated in the trial court’s written opinion. Plaintiff Hatfield had a loan with the Sa-repta Branch of the Minden Bank & Trust Company, with a balance of approximately $7,000, secured by a mortgage on Hatfield’s home. The mortgage required Hatfield to carry fire insurance. In September 1974 the Bank received notice that the fire insurance policy naming it as loss payee was being canceled. Johnny Paxton, manager of the branch bank, tried to locate plaintiff but was unable to do so. Paxton called Walter Hull, manager of Anthony-Bryan Insurance Agency, and obtained a $10,000 fire insurance policy issued by Insured Lloyds effective October 1, 1974 for a one-year period and containing a mortgagee clause in favor of the Bank. The original policy was delivered to the Bank. The same day Paxton wrote plaintiff advising him that the policy had been obtained and that the premium would be charged to plaintiff’s account. The Bank paid the $131 annual premium and debited plaintiff’s checking account for that amount. The debit was shown and explained in plaintiff’s regular bank statement and he made no -protest or objection.
In the spring of 1975 Hatfield discussed with Paxton getting a Small Business Administration loan in the amount of $25,000 or $30,000 and was referred to the Bank’s main office in Minden. About this same time Hatfield contacted Dennis McMullen, an agent for MFA Mutual Insurance Company, about obtaining a fire insurance policy on his home, mentioning the SBA loan and the Bank’s requirement that he have insurance coverage sufficient to cover the loan. MFA limited the amount of the policy to $20,000. McMullen called Paxton to get the exact name of the mortgagee. A $20,000 policy was issued by MFA about the end of March, effective March 5, 1975. At some point in time between the end of March and the middle of June the MFA policy was delivered or mailed to Paxton. Also at some point in time the proposed SBA loan was canceled.
After receiving the MFA policy which Paxton thought came in the mail from the Dennis McMullen agency, Paxton contacted Walter Hull about the middle of June and discussed cancellation of the Insured Lloyds policy. Paxton assumed that the MFA policy was intended to replace the Insured Lloyds policy. Paxton mailed the original Insured Lloyds policy to Hull for cancellation. Hull then caused the Insured Lloyds policy to be canceled effective March 5, the effective date of the MFA policy. Hull’s office prepared an invoice addressed to Hatfield dated June 27, 1975, reflecting a premium credit of $66.63, showing the Insured Lloyds policy number but not mentioning the name Insured Lloyds, and containing the word “cancellation” under the policy number. Hull testified the invoice would have been mailed to Hatfield in the normal course of business and Hatfield testified he never received it. The trial court found that the invoice was sent to Hatfield and we accept that finding as supported by sufficient evidence. Hatfield had other insurance with Hull’s agency but there is no evidence that he had a balance due to the agency against which the return premium was credited and Hatfield never received the return premium although Hull offered to write him a check for it after the fire.
On August 23, 1975, about two months after cancellation of the Insured Lloyds policy, plaintiff’s home valued at $35,000 was totally destroyed by fire.
*904 Insured Lloyds denied coverage based on cancellation of its policy. MFA refused payment to plaintiff under its policy based on alleged misrepresentations in the application for insurance, but paid the Bank the amount of its loan under the loss payee clause of the policy. Plaintiff filed suit against both insurance companies and the Bank. After trial the district court rejected MFA’s defense and granted judgment in favor of plaintiff against that company for the balance due under its policy. MFA paid the judgment and did not appeal. The trial court rejected plaintiff’s demands against Insured Lloyds and the Bank and plaintiff appealed.
Plaintiff’s position is that he obtained the MFA policy in order to have sufficient coverage, together with the Insured Lloyds policy, to cover his proposed SBA loan. Plaintiff contends the Bank officer was not authorized to direct cancellation of the Insured Lloyds policy and that the insurance company was not authorized to cancel it. Plaintiff denies having any knowledge of the cancellation until after the fire.
The position of the insurance company is that it' was entitled to rely on Paxton’s authority, either express, implied, or apparent, in cancelling the policy and that, in any event, Hatfield ratified the cancellation by failing to protest after receiving the invoice showing the cancellation. The Bank contends that Paxton acted reasonably in assuming that the MFA policy was sent to him as a replacement policy and in authorizing the cancellation of the Insured Lloyds policy.
It is not seriously argued that Pax-ton had express authority from Hatfield to instruct the insurance agent to cancel the Insured Lloyds policy. He never discussed the matter with Hatfield at any time. Neither was there implied authority from Hatfield to Paxton to have the policy canceled. Paxton’s action in obtaining the policy originally was ratified by Hatfield’s making no objection and allowing his account to be debited for the premium but that ratification carried with it no implied authority to later cancel the policy. Paxton’s assumption that the MFA policy was intended as a replacement for the Insured Lloyds policy is understandable, but was nothing more than an assumption. Paxton had no actual authority, either express or implied, to act for Hatfield in directing the cancellation of the policy.
Neither did Paxton have apparent authority to act for Hatfield in causing the cancellation of the policy. Apparent authority is a principle of estoppel which operates in favor of third persons seeking to bind a principal to an unauthorized act of an agent. In this context it is both fair and equitable to govern mutual rights and liabilities by the apparent scope of an agent’s authority, because third persons, who are not privy to the actual terms of the agency agreement, must rely entirely upon the in-dicia of authority with which the agent is vested. Broadway v. All-Star Insurance Corporation, 285 So.2d 536 (La.1973). Apparent authority, however, requires that the principal make manifestations to the third party in some form and that the third party reasonably rely on the agent’s purported authority as a result of the manifestations of the principal. Southwest Motor Leasing, Inc. v. Matthews Lumber Co., 325 So.2d 870 (La.App.2d Cir.1976). Apparent authority must flow from some act by the principal which leads the third person to reasonably believe that the agent is authorized to act for the principal. In this case, Hatfield did nothing to lead Hull, the insurance company’s agent, to believe that Paxton had authority to act for him. There was no contact whatsoever between Hull and Hatfield concerning this policy. The Bank’s possession of the original policy was as loss payee and in no way indicated apparent authority to cancel the policy. It was the purported agent’s actions, not the principal’s, on which the insurance company relied.
The policy was not canceled at the request of the insured, as provided for in the policy. The insurance company makes no contention that it effectively canceled the policy on its own initiative in accordance with the provisions of the policy.
*905 The remaining and pivotal question then is whether plaintiff ratified the cancellation of the policy by failing to take any action after the invoice showing the premium credit was mailed to him at the end of July, less than two months before the fire. The trial court’s decision turned on a finding of ratification. It is this conclusion which this court finds manifestly erroneous.
The invoice, if received by plaintiff, does not by any means clearly reflect the cancellation of the Insured Lloyds policy. The name of the insurance company is not shown on the invoice. Plaintiff had other insurance with the same agency. The only information on the invoice connected with the policy is the policy number, which would be meaningless to most insureds, and the dates 3/5/75-10/1/75 under a column headed “Policy Period.” No other notice was given and the premium was not actually refunded to plaintiff nor does the evidence reflect that he was actually given credit against a balance owed to the agency. Because of the vagueness of the invoice, plaintiff cannot be held to have reasonably known that the Insured Lloyds policy, for which he had paid a premium for a period of one year, was being canceled effective March 5, 1975. In view of the lack of effective and clear notice and in view of the short period of time that elapsed between the time the invoice was mailed and the date of the fire, plaintiff’s failure to take any action cannot be held to have constituted ratification of the cancellation of the policy.
The cancellation was ineffective and Insured Lloyds is liable for the amount of the policy.
That part of the district court’s judgment rejecting plaintiff’s demandá against Insured Lloyds is reversed and there is judgment in favor of plaintiff, Raymond L. Hatfield, and against defendant, Insured Lloyds, in the amount of $10,000, with legal interest thereon from date of judicial demand until paid. The costs of appeal are assessed to Insured Lloyds.
Reversed and rendered.