413 So.2d 942 (1982)
MITCHELL ENGINEERING COMPANY, DIVISION OF THE CECO CORPORATION
v.
RONALD A. GOUX, INC.
No. 14689.
Court of Appeal of Louisiana, First Circuit.
April 13, 1982.
Rehearing Denied May 25, 1982.
John L. Hantel, New Orleans, for plaintiff, appellee.
Wendell E. Tanner, Slidell, for defendant, appellant.
Before COVINGTON, COLE and WATKINS, JJ.
COVINGTON, Judge.
This is a suspensive appeal by the defendant, Ronald A. Goux, Inc., from a judgment signed on December 22, 1980, in favor of the plaintiff, Mitchell Engineering Company, Division of the CECO Corporation, in the amount of $28,993.00, with legal interest and costs. We affirm.
This suit arises out of an alleged breach of contract by Goux for failure to accept delivery of and to pay for three metal buildings and accessories which Mitchell fabricated for Goux pursuant to the subject contract. Based on the alleged breach of contract, Mitchell sued Goux for damages in the amount of $48,457.50, plus attorney's fees, interest and costs. Goux generally denied the allegations of plaintiff's petition, and affirmatively defended on the grounds "that the contract referred to by the plaintiff herein was not entered into by defendant herein, in that plaintiff or plaintiff's *943 representative knew or should have known that upon the date that the proposal was signed by Branch A. Goux, it was not the intention of Branch A. Goux to bind Ronald A. Goux, Inc. to the contract and in fact, no deposit was made on the proposal and Branch A. Goux is not an officer or an authorized representative of Ronald A. Goux, Inc." Further, defendant answered "that the representative of plaintiff, Robert Bycofski, was aware of the fact that Branch A. Goux could not bind defendant herein and was so informed by Branch A. Goux on the date such proposal was signed by Branch A. Goux."
After hearing all of the testimony, considering all of the evidence introduced, and listening to the arguments of counsel, the trial judge found in favor of the plaintiff, assigning the following oral reasons for his judgment:
"Although there is some evidence, in this case to indicate otherwise, the Court finds that the preponderance of the evidence which showed the existence of a contract between the plaintiff and defendant in this case. Some of the reasons for these findings are as follows:
"Ronald Goux, sole owner of the defendant company, in trying to get the price down on one job, asked the plaintiff's representative to include another job in his proposal. Although he requested defendant's representative to separate the proposals in two parts when he received it, after it was separated by the plaintiff's representative, he signed one of them almost immediately and indicated to the salesman that he would sign the other one later.
"After repeated attempts on the part of the plaintiff's representative to get the second contract signed, it was finally signed by Ronald Goux's father, who represented to the plaintiff's representative that he had just talked to the plaintiff and while standing or sitting in Ronald A. Goux's office, the so-called headquarters of Ronald A. Goux, Incorporated, Ronald Goux's father had been held out as having some authority to the plaintiff's representative, in his introduction, he admits that he probably introduced himself to the plaintiff's representative and said, `He is my construction superintendent on this job,' and was apparently quite often seen on the job by the plaintiff's representative.
"Branch Goux, the person who signed the contract, Ronald A. Goux's father, would have the Court believe that he told his son about signing that contract, holding a price on some steel. That he told his son about it the next day, yet, the son, Ronald A. Goux, would have this Court believe that his father had absolutely no authority, whatsoever, and perhaps he didn't, but what is important here, is what the plaintiff justifiably believed and he would have this Court believe that he had no authority, whatsoever, to sign the contract, so, I believe he told him about it the next day and then Ronald A. Goux, did absolutely nothing, in any way to contact Mitchell Company, after finding out his father had signed the contract, to make sure that the situation was, as he alleges to be today.
"Now, you have to have an intent to enter in a contract, if you want to hold the price of steel. Insofar as the intent is concerned, Branch Goux intended to hold the price of steel and couldn't very well bind the company, the plaintiff's company in here, without some fashion intending to bind it himself.
"Those are the factors which indicate authority on the part of Branch Goux to sign the contract. Over and above that, this Court finds there was ratification, by silence, on the part of Ronald A. Goux, Incorporated, through its representative, Ronald A. Goux, in remaining silent upon the receipt of three pieces of correspondence from Mitchell Incorporated Mitchell Engineering Company, I am sorry, and the defendant contends that this should not be considered a ratification of the contract signed by his father, on behalf of his corporation because he had never sent a ten percent deposit. And that is a troublesome matter for the Court to rule on at first, however, when *944 you look at the contract, this is certainly a clause that is in favor of the plaintiff corporation herein and is something that is waiverable on their part, although, it may be an argument in Ronald A. Goux, Inc.'s favor against ratification. This Court does not find it sufficient to find no ratification of Ronald A. Goux, Incorporated, through its sole owner, Ronald A. Goux.
"Having found that, there is a contract either properly, one that the plaintiff corporation could rely on and sue for damages or one that was ratified; either approach you take to it, having found that there is a contract, the Court further finds that Mitchell Engineering Company was damaged, as a result of a breach of that contract.
"The Court finds that the plaintiff corporation made legitimate attempts to try to mitigate their damages, insofar as its proposal for actual damages that should be assessed here today.
"The Court finds that the losses testified to by the cost accountant and the company are essentially correct and that is, there would be damages in the amount of $31,418.00, except the Court finds in cross examination by Mr. Tanner, that certain modifications, should be made to that figure. I will not award the inventory carrying or whatever that item is.
"The $31,418.00 should be reduced as follows: The first item listed under restock cost, $90.00, repainting, should be deducted from that figure, that I previously mentioned because the representative of the plaintiff company has indicated to the Court that they would repaint it, when they sold it and that repainting job would be charged to the next customer.
"The Court makes the same finding with regard to the restock cost items shown as fifteen hundred eighty-four dollars, for the same reason.
"And the cost of $437.00, listed immediately below it, for the same reason. There would be no need to purchase paint at this time. You would purchase the paint when you repaint it and sell it to the next purchaser.
"The Court further finds that the plaintiff's representative has indicated that engineering costs, with respect to the small building, which is the one, 40 foot by 75 foot by 16 foot Mitchell metal building mentioned near the end of the contract between the parties; plaintiff's representative indicated they would suffer no loss as a result of that and the engineering cost for that building would be passed on to the next purchaser and the proper pro-ration in accordance with sound cost analysis, as far as this Court is concerned, would be $314.00.
"With respect to an adjustment of sales commission, the Court does not find anything should be done with respect to it and in its presentation to the Court, the plaintiff's representative has not asked for margin of profit but only an overhead item, which this Court will not adjust.
"Accordingly, I find that the defendant corporation is liable to the plaintiff corporation in the sum of $28,993.00, plus legal interest from date of judicial demand and all costs of this proceeding."
In this case, the trial judge heard and observed the nine witnesses who testified. As set out above, his factual findings and conclusions favor the plaintiff. There is ample evidence in the record to support these factual findings and conclusions, and there is no basis in the record for us to disturb them. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Appellant specifies three errors in his brief:
"1. THE TRIAL COURT COMMITTED CLEAR AND MANIFEST ERROR in finding that Branch Goux was either by representation or actual authorization a representative of appellant.
"2. THE TRIAL COURT COMMITTED CLEAR AND MANIFEST ERROR in finding that a valid contract was entered into between appellee and Branch Goux for and on behalf of appellant.

*945 "3. THE TRIAL COURT COMMITTED CLEAR AND MANIFEST ERROR in finding that a contract was effected through silence on the part of the appellant, Ronald A. Goux, Inc."
The trial court found that the facts and circumstances of the instant case showed that Branch Goux had authority to sign on behalf of the defendant, so that a binding contract was effected between Goux and Mitchell. The testimony of Mitchell's district sales manager (sales representative), Robert Bycofski, shows that he and Ronald Goux, the president of the defendant corporation, initially discussed the sale of metal buildings for the Slidell job, which is the subject of this lawsuit, in conjunction with the Mandeville job. The price and object were agreed upon. Then Ronald Goux made a proposal for a package deal of the two jobs in one contract, which was acceptable to Mitchell; however, at Goux's request, the two jobs would have to be billed to two different corporations or entities.
Pursuant to this agreement, Ronald Goux executed the contract for the Mandeville job on behalf of another corporate entity. At that time, he indicated that the Slidell job contract would be with Ronald A. Goux, Inc., defendant herein, and that the actual signing would take place at a scheduled time within the next few days. The scheduled date was not met, but Ronald Goux phoned to arrange a meeting with Bycofski at his office in Mandeville. Although what actually took place at the Mandeville meeting on August 1, 1977, is disputed, it appears that Ronald Goux's father, Branch Goux, representing himself as authorized agent for his son appearing on behalf of Ronald A. Goux, Inc., signed the Slidell job contract as "Ronald A. Goux, Inc. Ronald A. Goux by Branch A. Goux."
An agency may be created expressly by a written agreement between the parties; it can also be created verbally Bellard v. Mowata Rice Drier, Inc., 400 So.2d 731 (La.App. 3 Cir. 1981). It may also be created by implication. It is created by implication when, from the nature of the principal's business and the position of the agent within that business, the agent is deemed to have permission from the principal to undertake certain acts which are reasonably related to the agent's position and which are reasonable and necessary concomitants of the agent's express authorization. Implied authority connotes permission from the principal for the agent to act, though that permission is not expressly set forth orally or in writing. Busby v. Walker, 84 So.2d 304 (La.App. 2 Cir. 1955), writ denied, Feb. 23, 1956. Southwest Motor Leasing, Inc. v. Matthews Lumber Company of Mansfield, Inc., 325 So.2d 870 (La. App. 2 Cir. 1976). We find, as did the trial court, that there was a binding contract between the parties for the Slidell job.
Prevoius to the signing of the contract, Ronald Goux had agreed with Mitchell on the Mandeville and Slidell jobs. See Benglis Sash & Door Co. v. Leonards, 387 So.2d 1171 (La.1980). It was at Ronald Goux's request and for his accommodation that two separate contract forms were to be used in order that Ronald Goux could use different entities for the two projects. Moreover, these facts and circumstances constitute such apparent authority for Branch Goux to sign on behalf of appellant, that it is estopped from denying his authority and is bound by its contract with Mitchell. Cast-Crete Corporation v. West Baro Corporation, 339 So.2d 413 (La.App. 1 Cir. 1976), writ denied, 341 So.2d 900 (La.1977); Dart Distributors, Inc. v. Foti Enterprises, Inc., 271 So.2d 705 (La.App. 1 Cir. 1972).
On this question, Goux contends that Branch Goux's signature was limited to holding the price of steel. The evidence does not support this contention. Bycofski testified that Branch Goux signed on behalf of Ronald Goux without indicating any conditions or limitations upon his execution of the contract. The contract itself and the circumstances at the time of its execution corroborate Bycofski's testimony.
Further, after the execution of the contract, neither Ronald Goux nor Branch Goux indicated any limitations, reservations or restrictions to the execution of the contract on their part. On the contrary, their *946 actions were such as to lead a reasonable person to believe that the contract was to be given full effect as written.
In addition, appellant argues that there was no contract, because it had no use for such metal buildings at the time of execution of the contract. That is of no moment. Nevertheless, the record does not support such contention. It appears that appellant merely sought a delay in delivery of the building, because it was seeking a new site on which to locate the building since the original site had been used for other commercial purposes.
A further argument by appellant that there was no contract between the parties is that Goux never paid a "down payment" which the contract required. The required down payment was merely one of the provisions of the contract, not a suspensive condition to the making of the contract. Furthermore, as pointed out by the trial judge in his reasons for judgment, the down payment requirement was a clause in favor of or for the protection of Mitchell, which it could waive if it so desired. Both Bycofski and Bobby Flemming, Mitchell's credit manager, testified that Mitchell waived the down payment in this instance. As explained by Flemming, Mitchell had already received a 10% down payment on a related project from Goux so that as a "standard" customer, Goux was not required to actually put up such down payment on the Slidell job.
For the assigned reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.