FIRST INTERSTATE BANK OF TEX-
AS, N.A., Plaintiff–Appellant,

v.

FIRST NATIONAL BANK OF JEFFER-
SON, Defendant–Appellee.

FIRST INTERSTATE BANK OF
TEXAS, N.A., Plaintiff–Appellee

v.

FIRST NATIONAL BANK OF JEFFER-
SON, Defendant–Appellant.

Nos. 90–3049, 90–3111.

United States Court of Appeals,
Fifth Circuit.

April 5, 1991.

**154**

Gordon F. Wilson, Jr., Douglas S. Draper, Barbara H. Weiss, Friend, Wilson & Draper, New Orleans, La., for First Interstate Bank of Texas.

Michael R. Fontham, William D. Treeby, William E. Brown, Mary L. Dumestre, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., for First Nat. Bank of Jefferson.

Before CLARK, Chief Judge, GARZA and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

First Interstate Bank of Texas (First Interstate) sued First National Bank of Jefferson Parish (FNJ) for breach of a bond purchase agreement. FNJ claimed the benefit of the *D'Oench, Duhme* doctrine and moved for summary judgment. 731 F.Supp. 746. The district court denied the motion, and FNJ cross-appealed. We affirm that ruling. At trial, the district court concluded that First Interstate produced insufficient evidence to present a jury question that FNJ Senior Vice President John Boyd had authority to execute the bond purchase agreement for FNJ. The court directed a verdict in favor of FNJ, and First Interstate appealed. We reverse and remand the judgment based on that ruling.

I.

In 1982, the Louisiana Public Facilities Authority (LPFA) agreed to issue $3 million worth of industrial revenue bonds and lend the proceeds to New Orleans Property Development (NOPD). NOPD arranged for the funds to develop a hotel in New Orleans. NOPD sought a lender, someone to purchase the bonds. In February 1982, NOPD submitted a loan application to FNJ for the full $3 million.

On March 12, FNJ through Stratton Orr, its vice president, sent a commitment letter to NOPD agreeing to purchase the entire $3 million bond issue. NOPD accepted FNJ's offer. Before FNJ sent the commitment letter to NOPD, First Interstate notified FNJ that it was willing to purchase only $1 million of the bond issue. First Interstate later agreed to purchase $2 million of the bond issue. First Interstate asserts that it conditioned its agreement to purchase the additional $1 million in bonds upon FNJ's commitment to buy First Interstate's NOPD bonds in the future if First Interstate so desired.

One of the parties instructed Butler & Binion, the law firm representing FNJ and First Interstate, to reduce to writing the oral agreement that FNJ would buy, upon First Interstate's demand, the entire $2 million of NOPD bonds held by First Interstate. The attorneys sent a draft of the agreement, styled a Bond Purchase Agreement (BPA), to FNJ Senior Vice President John Boyd. Boyd, who was Stratton Orr's supervisor, assumed the NOPD account when Orr left FNJ in May or June 1982. According to Boyd, he discussed the agreement with FNJ President Arceneaux, who left Boyd with the impression that execution of the BPA was an "acceptable approach."

On May 4, First Interstate and FNJ signed an agreement with NOPD and LPFA in which First Interstate agreed to purchase $2 million worth of bonds and FNJ $1 million. The parties closed the NOPD transaction on July 29. On that day, FNJ, through Boyd, and First Interstate, through LaRue, signed the separate bond purchase agreement, which is at issue in this suit. In this document, FNJ agreed to purchase all of First Interstate's NOPD bonds upon First Interstate's demand. In August 1988, First Interstate demanded that FNJ buy its bonds pursuant to the July 29, 1982 BPA. FNJ refused, arguing

that it was not bound by the BPA because Boyd did not have the authority to sign the agreement for FNJ. First Interstate filed this suit to enforce the July 29 BPA.

FNJ moved for summary judgment arguing that the *D'Oench, Duhme* doctrine prohibited the enforcement of the BPA. The district court denied this motion. First Interstate's action proceeded to trial in January 1990. After First Interstate rested its case, FNJ moved for directed verdict, arguing that First Interstate had not produced sufficient evidence to support a jury finding that Boyd was authorized to bind FNJ by signing the BPA. The district court granted FNJ's motion and dismissed First Interstate's suit. First Interstate appeals that ruling. FNJ then cross-appealed the district court's denial of its summary judgment motion.

## II.

■ FNJ argues that the district court erroneously denied its motion for summary judgment rejecting its contention that it is entitled to the benefit of the doctrine established in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). Our review is de novo. *Jones v. Southern Marine & Aviation Underwriters Inc.*, 888 F.2d 358, 360 (5th Cir.1989). Summary judgment is appropriate if the record reveals that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

■ FNJ contends that the *D'Oench, Duhme* doctrine forbids enforcement of "secret agreements," like the BPA, against banks insured by the Federal Deposit Insurance Corporation (FDIC). We agree with the district court that the *D'Oench, Duhme* doctrine should not be applied in this case. The district court properly denied summary judgment.

In *D'Oench, Duhme & Co. v. FDIC*, the FDIC took over a failed bank and thereby acquired a promissory note executed by D'Oench, Duhme & Co. 315 U.S. at 454, 62 S.Ct. at 678. The failing bank asked

D'Oench, Duhme to execute the note so the bank's records would show a current note instead of unredeemable bonds the bank had previously written off. A transaction receipt stated that the parties executed the note with the understanding that D'Oench, Duhme would not have to repay the bank. *Id.* The FDIC was not aware of this secret agreement when it acquired the note. *Id.* The Supreme Court held that D'Oench, Duhme was estopped from enforcing the secret agreement to deny its liability on the notes. The Court reasoned that federal policy expressed in the Federal Reserve Act protected the FDIC from misrepresentations about assets in FDIC-insured bank portfolios. *Id.* at 461, 62 S.Ct. at 681. FNJ argues that *D'Oench, Duhme* forbids the enforcement of the BPA because neither bank reported the transaction to the FDIC. The district court rejected this argument reasoning that the doctrine was not applicable because the FDIC was not a party to this action in any capacity and that both First Interstate and FNJ were solvent when they signed the BPA.

FNJ relies on the following language from *D'Oench, Duhme* in support of its argument that the doctrine should be applied in this case: "[A]n accommodation maker is not allowed that defense [failure of consideration] as against the receiver of the bank and its creditors, or at times even as against the bank itself, where his act contravenes a general policy to protect the institution of banking from such secret agreements." *Id.* at 458, 62 S.Ct. at 680. FNJ does not cite, however, a single instance in which a court has extended the *D'Oench, Duhme* doctrine or the statute codifying it (12 U.S.C. § 1823(e)) to protect solvent, FDIC-insured banks. In applying *D'Oench, Duhme*, courts have made clear that the doctrine creates a defense for bank regulatory agencies. "The focal point of the [*D'Oench, Duhme* ] analysis is . . . on whether [the transaction] is in contradiction with what the bank has stated to the FDIC, or is part of any effort to deceive or mislead the FDIC. . . ." *First State Bank v. City & County Bank*, 872 F.2d 707, 717 (6th Cir.1989). Courts have

been circumspect in applying *D'Oench, Duhme* even in cases in which the FDIC and Federal Savings & Loan Insurance Corporation (FSLIC) are parties. In *Thurman v. FDIC,* this Court held that the FSLIC acting in its corporate capacity could not assert the *D'Oench, Duhme* doctrine to upset a judgment rendered against a savings association (CSA) that the FSLIC insured before the association failed and was taken over. 889 F.2d 1441 (5th Cir. 1989). We observed that the *D'Oench, Duhme* defenses "were not enjoyed by CSA." *Id.* at 1446.

The *D'Oench, Duhme* doctrine protects the FDIC, not a solvent bank. The district court correctly declined to extend the doctrine to this case in which the FDIC is not a party.

## III.

First Interstate argues that the district court erroneously directed a verdict for FNJ on the issue of Boyd's authority. We follow the familiar *Boeing Co. v. Shipman* standard: A court should direct a verdict only "[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." 411 F.2d 365, 374 (5th Cir.1969) (en banc). Our review of the record persuades us that reasonable, fair-minded jurors could reach different conclusions about whether Boyd had actual or apparent authority to bind FNJ.

The parties agree that Louisiana law governs our analysis. Louisiana agency law recognizes two types of authority, actual and apparent. *Karam v. Travelers Ins. Co.,* 813 F.2d 751, 752 (5th Cir.1987). We begin with a discussion of actual authority.

## A.

■ Actual authority can be express or implied. *Id.; see Southwest Motor Leasing, Inc. v. Matthews Lumber Co.,* 325 So.2d 870, 873 (La.Ct.App. 2d Cir.1976). The district court held that a jury was not entitled to find that Boyd had express actual authority to execute the BPA because no

corporate resolution or by-law specifically authorized the transaction. A principal, however, can confer actual authority orally. *See Karam,* 813 F.2d at 752, 753. The following testimony could convince a jury that FNJ likely gave Boyd express actual authority to sign the BPA.

■ Boyd testified that FNJ authorized him to sign the BPA. Boyd said that he discussed the NOPD transaction, including the BPA, with Arceneaux and other FNJ officers. Arceneaux denied having such discussions. The district court weighed Boyd's testimony, but "considered [it] very weak." Given the corroborating evidence, we are persuaded that it was sufficiently strong for a reasonable jury to credit it.

Boyd's position in the FNJ hierarchy lends credence to his assertion that the bank authorized him to sign the BPA. Boyd was one of only four FNJ senior vice presidents, an office of considerable responsibility. He was hired by and reported directly to President Arceneaux. Not only did Boyd handle loans himself, he also supervised several FNJ vice presidents. He was Stratton Orr's supervisor during part of the time Orr handled the NOPD transaction. When Orr left, Boyd became directly responsible for the NOPD loan. A juror could surmise that a person who held the position of senior vice president, who was responsible for handling the NOPD loan account, and who supervised other loan officers was the type officer FNJ would have authorized to sign the inter-bank agreement at issue here.

First Interstate Vice President Robert LaRue's testimony about his conversations with Arceneaux also corroborates Boyd's assertion that FNJ authorized him to sign the BPA. LaRue testified that he joined a telephone conversation between President Arceneaux and Ken Anderson, an executive vice president at First Interstate. Arceneaux and Anderson had been discussing what could be done to induce First Interstate to buy more of the bonds. LaRue said that after his conversation with Arceneaux, he understood that First Interstate would buy $2 million of the bonds if FNJ

agreed to the buy-back provision. A jury could infer that if Arceneaux participated in negotiating the buy-back agreement, FNJ must have authorized Boyd to consummate the transaction.

The record demonstrates that the BPA did not obligate FNJ any further than its March 12 commitment letter to NOPD. On that date, FNJ committed to buy the entire $3 million bond issue. President Arceneaux conceded that the letter bound FNJ to take the entire issue. The commitment letter does not condition the bond purchase on FNJ's ability to find a co-lender. Thus, the July 29 BPA did not extend FNJ's obligation on the bonds beyond its March 12 commitment. Both agreements made FNJ the principal lender on a $3 million loan. The fact that the BPA did not expand FNJ's exposure supports Boyd's assertion that FNJ authorized him to sign the BPA.

In sum, we conclude that the evidence presented a jury question whether FNJ gave Boyd express actual authority to execute the BPA.

### B.

■ We now turn briefly to the issue of implied actual authority. " 'Implied authority' is actual authority which is inferred from the circumstances and nature of the agency. An agent is vested with the implied authority to do all of those things necessary or incidental to the agency assignment." *Demolle v. Horace Mann Ins. Co.*, 491 So.2d 695, 698 (La.Ct.App. 5th Cir.), *writ denied*, 496 So.2d 1041 (La.1986). "Implied authority connotes permission from the principal for the agent to act, though that permission is not expressly set forth orally or in writing." *AAA Tire & Export, Inc. v. Big Chief Truck Lines*, 385 So.2d 426, 429 (La.Ct.App. 1st Cir.1980).

First Interstate argues that a juror might infer from the nature of the bank's business and Boyd's position in that business that Boyd had implied actual authority to sign the BPA. *See Mitchell Eng'g Co. v. Ronald A. Goux, Inc.*, 413 So.2d 942, 945 (La.Ct.App. 1st Cir.1982). First Interstate does not explain, however, why Article

2997 of the Louisiana Civil Code does not defeat this argument. Article 2997 provides in part: "[T]he power [of mandate or agency] must be *express* for the following purposes: To sell or to buy.... To contract a loan or acknowledge a debt." (emphasis added).

Recent Louisiana case law suggests that Article 2997 bars First Interstate's implied actual authority claim. In *Byrd v. Cobbs, Allen & Hall Mortgage Co.*, prospective borrowers brought suit against a mortgage bank to enforce a mortgage commitment. 466 So.2d 587 (La.Ct.App. 5th Cir.1985). The mortgage bank argued that its loan solicitor did not have authority to issue such a loan commitment; the court agreed. *Id.* at 588. Article 2997, noted the court, required that the loan solicitor have *express* actual authority to sign the mortgage agreements. *Id.* at 593 (emphasis added). Civil Code article 2997 prevents First Interstate from recovering under an implied actual authority theory. The district court correctly declined to submit this theory to the jury. We turn finally to First Interstate's apparent authority argument.

### C.

■ A corporation will be liable to a third party even for the unauthorized acts of its agent under the doctrine of apparent authority if (1) the corporation manifests the agent's authority to the third party, and (2) the third party reasonably relies on the agent's purported authority as a result of the manifestation. *Southwest Motor*, 325 So.2d at 873. We conclude that First Interstate also introduced sufficient evidence to create a jury question on Boyd's apparent authority to bind FNJ.

When FNJ hired Boyd as a senior vice president, it manifested to the public that Boyd had the authority to bind the bank in agreements necessary to conduct the bank's business. *See Cook v. Ruston Oil Mills & Fertilizer*, 170 La. 10, 127 So. 347, 353 (1930) ("[T]he corporation, by the very fact of the appointment of such manager, holds him out to the public as the person authorized to bind it by contracts necessary

in the prosecution of its business."). On the day of the NOPD closing, FNJ specifically manifested to First Interstate that Boyd was authorized to execute the necessary closing papers on behalf of FNJ. FNJ sent Boyd and one of its trust officers to the closing with a certification that Boyd was its senior vice-president and that he was acting on behalf of FNJ's Board of Directors. The BPA was signed by the parties at the closing. The jury was entitled to conclude that when FNJ sent Boyd to the closing with a certificate of his authority, the bank was also manifesting Boyd's authority to sign the BPA, without which First Interstate would not have agreed to buy the NOPD bonds.

FNJ also implicitly manifested Boyd's authority when its president, Arceneaux, sent Boyd to consummate a deal that Arceneaux himself helped negotiate. LaRue, the loan officer representing First Interstate in the NOPD transaction, testified that he spoke to Arceneaux about the deal. LaRue said that he and Ken Anderson, First Interstate's executive vice president, agreed with Arceneaux in a telephone conversation that First Interstate would buy $2 million in bonds if FNJ acquiesced in a buy-out provision. If a jury accepts this testimony, it could conclude that Arceneaux's conversation with Anderson and LaRue was a specific manifestation of FNJ's willingness to commit to the BPA. The jury could also view this evidence as a manifestation by FNJ that Boyd, the FNJ senior vice president in charge of this transaction, was authorized to sign the BPA.

A jury could also find that First Interstate bought $2 million of the bond issue in reliance on FNJ's commitment to purchase these bonds at any time. The manifestations discussed above were sufficiently strong to support an inference by the jury that First Interstate's reliance on these manifestations was reasonable.

■ FNJ argues that the doctrine of apparent authority does not apply in this case because First Interstate did not inquire into the extent of Boyd's authority. FNJ maintains that Louisiana imposes an absolute duty on a third party to inquire about an agent's authority. We disagree. A third party can rely on the apparent authority of an agent until something occurs that would cause a reasonable person to inquire further into the circumstances. *Radiofone v. Oxford Bldg. Serv.*, 347 So.2d 327, 329–30 (La.Ct.App. 4th Cir.1977); *see Mary Adams & Assoc. v. Rosenblat*, 539 So.2d 860, 863 (La.Ct.App. 5th Cir.1989) (plaintiff proved apparent authority even though she did not inquire into extent of agent's authority because she had reason to believe agent had authority to transact business). The cases cited by FNJ in which courts found a duty to inquire are distinguishable. In those cases, the agent was either not an officer or even an employee of the purported principal; thus, a reasonable person would have inquired about the agent's authority.

A jury could conclude that First Interstate need not have made further inquiry. LaRue testified that he personally discussed the BPA with President Arceneaux. If the jury accepts LaRue's account, it could deduce that FNJ's top officer was willing to enter the buy-out agreement, which made further inquiry unnecessary. Because a reasonable jury could conclude that Boyd had apparent authority to bind FNJ on the BPA, a directed verdict was inappropriate.

For the reasons stated above, we affirm the summary judgment entered against FNJ. But we reverse the judgment entered on the directed verdict in favor of FNJ and remand this case to the district court for further proceedings consistent with this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED.